MILLER v. BANK OF HOLLY SPRINGS.

[95 South. 129.  No. 22862.]

1. BANKS AND BANKING.  *Bank held authorized to receive for safe-keeping valuables of its customers.*

A bank, whose charter confers the power on it "to receive on deposit in any sum not less than one dollar in value of gold or silver coin, bank notes, treasury notes, or other valuable thing," is authorized to receive for safe-keeping as special deposits valuables of its customers.

2. CONTRACTS. *"Sufficient consideration" defined.*

There is a "sufficient consideration" for a promise if there be any benefit to the promisor or any loss, detriment, or inconvenience to the promisee, or if the person to whom the promise is made refrains from doing anything which he has the right to do, whether there be any actual loss to him or actual benefit to the party making the promise; and such consideration is sufficient, even though it be inadequate.

3. BANKS AND BANKING. *Bank held liable for loss·of customer's property, continued on deposit in consideration of removal from money vaults, in which bank failed.*

In a case where a bank had on special deposit War Saving Stamps of one of its customers for safe-keeping which had been placed in the bank's vault instead of its safe, where its money was kept, and such customer, on learning from the public press that many banks in the country were being burglarized and United States War Saving Stamps and Liberty Bonds of their customers stolen therefrom, informed said bank that he desired to move said War Saving Stamps to another bank for safe-keeping, because he was afraid for said stamps to remain in its vault, and thereupon said bank agreed that if said depositor would permit his said stamps to remain with it they would be placed in its safe where its money was kept, which was burglar proof, which proposition said depositor accepted, and said bank violated said agreement by permitting said stamps to remain in its vault, which was burglarized and said stamps stolen therefrom, while its safe where it kept its money was not, *held,* said agreement is a special and not a general contract of bailment, and based on a sufficient consideration, and therefore said bank is liable to said depositor for the loss suffered by him.

APPEAL from circuit court of Marshall county.

HON. W. A. ROANE, Judge.

Action by John M. Miller against the Bank of Holly Springs. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

*Wells, Stevens & Jones, E. M. Smith, E. C. Wright* and *D. M. Featherston,* for appellant.

As shown in the testimony appellant, after going to said bank for the avowed purpose of moving said stamps, desisted and refrained from moving said stamps and bonds to another place of safety deposit on the specific promise

of the president of said bank that said stamps and bonds should and would be placed in their money safe. This special contract made and entered into at this time by the appellant and appellee to place these stamps in a specific place or receptacle is not denied anywhere in this record, and therefore must be accepted as an established fact. The court will note that the plea of general issue is a plea of not guilty which does not take issue to the making of said contract, nor does the special plea deny the special contract sued on in this case, or its breach; but whilst the testimony of appellee does not anywhere deny this agreement or contract, it pleads that the special agreement on its part is *nudum pactum* and that they are not bound by it. This position cannot be successfully maintained under the proof disclosed by this record. Appellant was a regular depositor and customer of this bank. He had gone there for the expressed and avowed purpose of removing his bonds and stamps to another bank because of his lack of confidence in the security of appellee's vault. Mr. Fort, the president of appellee's bank, was a skilled and experienced banker and knew that the removal of the bonds and stamps to another bank by this old customer and depositor, on the ground that appellee's vault was not safe, would create suspicion that appellee's bank was unsafe and insecure for the deposit of securities and other things of value, a reputation which no bank could bear and hold its customers, as perfect confidence is the very life and existence of a bank. So, this farsighted and careful banker immediately took steps to prevent the removal of these securities from appellee's bank to a competing banking institution, which he accomplished by entering into the contract with appellant to place the stamps in their money safe where, he stated, that it would take a burglar twenty-four hours to enter. This promise satisfied appellant and he desisted and forbore the removal of said stamps and bonds to the other bank. Will this court, under these facts, say that there was no consideration for this contract?

The case of *Odineal, President of the Board of Supervisors,* v. *Richard Barry, et al.,* 24 Miss. 9, was a suit which

arose under the following circumstances: It became necessary to build a new court house in the city of Columbus and a new site in a different locality was offered free if the county would build on this new site. Some persons who owned property near the old site, whose property would be depreciated by the removal of the court house to the new site, gave their note for two thousand dollars, provided the new building was erected on the old site. The new court house was erected on the old site and when sued upon this note the makers thereof pleaded want of consideration as one of their defenses. Justice YERGER in delivering the opinion of the court says:

"Was there sufficient consideration for the note? Judge STORY lays down the rule, 'that a sufficient consideration for a promissory note may consist either in some right, interest, profit, or benefit occurring to the parties to make the contract, or some forbearance, detriment, loss, responsibility, act, or labor on the other side,' " and upheld the validity of the note.

In the case of *Byrne* v. *Cummings*, 41 Miss. 192, Justice ELLETT in laying down the rule uses this language: "Any benefit to the party promising, by the act of the promisee, is a sufficient consideration, and it is not essential that there should be any adequacy in point of actual value, but a slight benefit will be sufficient."

"So, also, any loss, trouble or inconvenience sustained by the promisee, at the instance of the person making the promise, will be a good consideration, although such trouble, loss or obligation be of trifling description, provided it be not utterly worthless in law and fact; and although the person making the promise obtains no benefit or advantage from the performance of the stipulated act by the promisee." *Magee* v. *Catchings*, 33 Miss. 672; *Turner & Co.* v. *Brown*, 3 S. & M. 425. This same rule of law as to what constitutes a consideration is announced by the elementary writers on the subject. Lawson on Contracts (2 Ed.), section 98.

We do most earnestly insist that the forbearance of appellant to remove the stamps from the bank of appellee,

which he went there to do and which he desisted from doing at the request of Mr. Fort, the president of the bank, on the specific promise that he would place these stamps and bonds in the money safe, was sufficient consideration to support the contract under the rule of law announced by our supreme court and the elementary writers.

In reply to the argument of appellee's counsel that the appellee's bank was not authorized by its charter and by-laws to receive special deposits like the ones in question, we desire, in addition to the authorities cited in the brief heretofore filed by appellant, to support the contention that, if a bank is in the habit as bailee of receiving special deposits either gratuitously or for hire, they become liable therefor under the law, whether authorized so to do by their charter or not, to bring to the court's attention some of the proof in this record showing that it was the custom of the appellee bank to receive special deposits of bonds and war savings stamps and place them in their money safe or vault. We insist, however, that under the charter and by-laws ample authority was given the bank to receive such deposits. *National Bank* v. *Graham,* 100 U. S. 701-702; *Patterson* v. *Syracuse Bank,* 36 Am. Rep. 589-590; *Trustees Elon College* v. *Banking & Trust Co.,* 109 S. E. 6.

The basis of this suit is the breach of the special contract made by the appellee with the appellant to place the stamps in a special receptacle, which was its money safe regardless as to whether they were negotiable or non-negotiable. The right of bailee and bailor to restrict or enlarge liability under the law has been fully discussed in appellant's former brief, and we will not further consider or pursue this further in this rejoinder brief, except to cite the case of *Trustees of Elon College* v. *Elon Banking & Trust Company,* in 109 S. E. *supra; McCutchen* v. *Rice,* 56 Miss. 456-461; *Love et al.* v. *Stone,* 56 Miss. 449; *Turpentine Co.* v. *Calamity Land Co.,* 109 Miss. 633; *Land & Carter Hardware Co.* v. *Carberry,* 114 Miss. 525.

We have not the opportunity nor the library to examine all the authorities cited by opposing counsel in his brief, but we have examined carefully the authorities cited from

our state, and, if the authorities cited from other courts
are not more applicable to the case at bar than those from
our own state, we feel that there is little comfort in them
for the appellee. We fail to find the case of *State* v. *Commercial Bank,* in 68 Miss. 218, cited by appellee, and therefore cannot say whether the said case is applicable to the
case at bar.

The case of *Bank of Gloster* v. *Hindman,* 95 Miss. 742,
is one where the facts show that the cashier of the bank of
his own authority executed mortgages on the bank's property unknown to the directors and not acquiesced in by
them in any way, or ratified either actually or constructively. The court very properly held that the cashier did
not have this authority. There is no such state of facts
in the case at bar.

The case of *Caldwell* v. *Hall,* 60 Miss. 330, the facts show
that Caldwell was a merchant and that Hall placed in
Caldwell's safe in an open box a small sum of money with
the understanding that Caldwell could use said funds ·if
he so desired, which he did not mingle with his own except
some times used a small portion of it in making change,
always dropping into the box a ticket showing the amount
so withdrawn and always replacing said amounts in ·a few
days. This was known and acquiesced in by both parties.
The safe was burglarized and Caldwell's money and also
Hall's taken. The court held that there was no liability
on the part of Caldwell. Caldwell was a merchant and not
a banker and this case is not applicable, as Caldwell carried out his part of the agreement by placing the money
in his safe, where he had agreed to place it, and where he
was requested to place it by Hall.

Learned counsel for appellee cite and quote from the
case of *Railroad Company* v. *Hughes,* 94 Miss. 242, at
length, claiming that Justice Fletcher in that case "established the rule to be absolute in Mississippi that when
the article bailed is lost by fire or otherwise the burden is
on the bailor, plaintiff, in the absence of proof as to circumstances to show that it resulted from bailee, defendant's negligence." Let us see what was really decided in

that case.  Quoting Justice FLETCHER's words "We only hold that, in the absence of proof as to the circumstances of this trial, the defendant was improperly held to be *prima-facie* negligent, since the destruction of property by fire is entirely consistent with ordinary care." The facts in this case show that Hughes had left his baggage in the depot and would pay storage when he called for it.  The depot was destroyed by fire and the baggage also.  The safe where appellee had contracted to keep appellant's stamps was not destroyed by fire nor burglarized.  Surely, this case is not applicable to our case.  Let it be remembered that Justice FLETCHER in this case was passing especially upon the question of submitting the case to the jury, and we again quote from the opinion on page 253:

"We intimate nothing as to the quantity of the proof as to negligence which will suffice to warrant the submission of this case to the jury, or which will call for an explanation by the defendant."

The evidence fully established appellant's right to recover, and, therefore, it was error in the lower court to sustain appellee's motion to grant it the peremptory instruction to find for it.

*Lester G. Fant,* for appellee.

The bank is managed by its directors.  The officers and employees have only such authority as is granted to them by the directors.  *State* v. *Commercial Bank,* 6 S. & M. 218, 45 Am. Dec. 280; *Bank of Gloster* v. *Hindman,* 95 Miss. 742.  The powers of a bank president it may safely be said are not so important or extensive as those of its cashier: 3 R. C. L., par. 66; *Leggett* v. *New Jersey Mfg. & Banking Co.,* 23 Am. Dec. 728.  If bonds are stolen the bank is relieved of any liability, provided that the burglary is not made possible by gross negligence of the bank.  *Wylie* v. *Northampton National Bank,* 119 U. S. 361, 30 Law. Ed. 455.

In a special deposit no title passes to the bank, but the bank holds as a bailee of the depositor.  *Fogg* v. *Tyler,* 39

L. R. A. (N. S.) 847, and note. A special deposit is deemed gratuitous if it is accepted for the accommodation of the depositor, and without any undertaking by him, expressed or implied, to pay or do anything as compensation or reward for keeping the deposit. *Merchants National Bank* v. *Guilmartin,* 17 L. R. A. 322; *Bank of Carlysle* v. *Graham,* 21 Am. Rep. 49.

In case of special deposit even in case of money in, packages, for safe keeping, no consideration can be implied; the bank cannot use the deposit in its business and no such profit or credit from the holding of the money can arise as will convert the bank into a bailee for hire, or reward of any kind. There must be a compensation of some sort actually contemplated in the contract and bargained away by the bailor. The fact that the special depositor is also a general depositor in the bank is hardly sufficient, unless the retention of the general deposit account was stipulated for. 3 R. C. L., 187; *Merchants' Nat. Bank of Savannah* v. *Guilmartin,* 88 Ga. 797, 15 S. E. 831, 17 L. R. A. 322, 93 Ga. 503, 21, S. E. 55, 44 A. S. R. 182; *Foster* v. *Essex Bank,* 17 Mass. 479, 9 Am. Dec. 168 and note; *First Nat. Bank of Lyons* v. *Ocean Nat. Bank,* 60 N. Y. 278, 19 Am. Rep. 181; *Lloyd* v. *West Bank,* 15 Pa. St. 172, 53 Am. Dec. 581; *Scott* v. *Nat. Bank of Chester Valley,* 72 Pa. St. 471, 13 Am. Rep. 711; *First Nat. Bank of Carlisle* v. *Graham,* 79 Pa. St. 106, 21 Am. Rep. 49; *First Nat. Bank of Allentown* v. *Rex,* 89 Pa. St. 308, 33 Am. Rep. 767; *Whitney* v. *First Nat. Bank of Brattleboro,* 55 Vt. 155, 45 Am. Rep. 598; Am. Dec. 424, note; 38 A. S. R. 780, note; 51 A. S. R. 101, note; 32 L. R. A. 771, note.

The bank does not undertake to exercise any greater care in the preservation of special deposits than the depositor has reasonable right to suppose is exercised in keeping the bank's property of like description. *United Society of Shakers* v. *Underwood,* 15 Am. Rep. 731.

The criterion of the degree of care required of the bank is the care the bank bestows upon its own property of like description, provided the bank is not grossly negligent in the care of its own property. *Preston* v. *Prather,* 137 U. S.

604, 34 L. Ed. 788.   As a general rule a bank is not liable for loss of a special deposit for which it receives no compensation, by the theft of its cashier or other servant, provided it has not been guilty of negligence in any respect. *Merchants Nat. Bank of Savannah* v. *Guilmartin,* 88 Ga. 797; *Foster* v. *Essex Bank,* 9 Am. Dec. 168; *Smith* v. *First Nat. Bank in Westerfield,* 97 Am. Dec. 59; *Scott* v. *Nat. Bank of Chester Valley,* 13 Am. Rep. 711; *First Nat. Bank of Allentown* v. *Rex,* 33 Am. Rep. 767.

ANDERSON, J., delivered the opinion of the court.

Appellant, John M. Miller, sued appellee, Bank of Holly Springs, in the circuit court of Marshall county for the value of United States War Saving Stamps owned by him of the maturity value of one thousand dollars, which appellee held as a special deposit, and failed to return to appellant on demand because of the fact that its bank vault where said stamps were kept had been burglarized and said stamps stolen therefrom.   At the conclusion of the evidence there was a directed verdict in favor of appellee, and judgment accordingly, from which appellant prosecutes this appeal.

A reversal is asked upon that action of the court.   Therefore the evidence must be treated as proving every fact favorable to appellant's case which it either proves or tends to prove.   So considering the evidence, appellant made the following case:   Appellee had in its bank a Corliss safe, in which it kept its money, Liberty Bonds of its customers, and other valuables.   In addition it had a steel lined vault in which it kept as special deposits the War Saving Stamps of its customers as well as other valuables.   In June, 1918, appellant purchased through appellee United States War Saving Stamps of the maturity value of one thousand dollars, which he left on special deposit with appellee for safekeeping.   These stamps were placed by an officer of the appellee in its said vault.   In the summer or early fall of 1919 the vaults of a good many banks over the country were being burglarized, and United States Liberty Bonds

and War Saving Stamps stolen therefrom. Appellant, learning of this fact through the public press, approached Mr. Fort, who was the active president of appellee bank as well as a director therein, and stated to him that, in view of these burglaries, he was uneasy about his War Saving Stamps remaining in appellee's said vault, and therefore desired to remove them to another bank for safe-keeping. Mr. Fort in response stated that, if appellant would permit his stamps to remain in appellee bank, he would, in order to assure their safety, put them in the Corliss safe, where the money of the bank was kept; and in this connection stated that it would take a burglar twenty-four hours to get into said Corliss safe. Thereupon appellant agreed that the stamps should remain on deposit with appellee upon condition that they were put in that safe. In November, 1919, appellee's vault was burglarized, and the appellant's stamps stolen therefrom, appellee having failed to place them in its Corliss safe as agreed, which was not burglarized, and therefore appellant's loss was caused by appellee's breach of its agreement.

Appellee contends that under the provisions of its charter the action of its officers in receiving special deposits of this character was *ultra vires,* for the reason that its charter did not authorize it to receive that character of deposits. Section 4 of appellee's charter among other powers confers on appellee (quoting its language) :

"That said company shall be authorized to receive on deposit, in any sum not less than one dollar in value of gold or silver coin, bullion, bank notes, treasury notes, or *other valuable thing.*" (Italics ours.)

We are of the opinion that United States War Saving Stamps come within the language as well as the intent and purpose of appellee's charter. "Other valuable thing" is very broad and comprehensive. It is sufficient to include anything of value which is ordinarily deposited with banks for safekeeping. And, furthermore, appellee's managing officers so construed its charter, and in dealing with its customers acted on such construction; therefore, if there were any ambiguity in its charter in that respect, such

construction would control as between appellee and its customers relying thereon.

Appellee contends that said contract of deposit was without consideration moving to it; therefore it held said deposit merely as a gratuitous bailee, and is not liable to appellant for its loss unless such loss was caused by appellee's negligence, and, there being no evidence of such negligence, the action of the trial court in directing a verdict for appellee was authorized. On the other hand, appellant contends that said contract was one of special bailment, with sufficient consideration to support it, and appellee, having violated its terms, is liable to appellant for the loss suffered by him as the result of such breach, and that whether appellee was negligent or not in handling said stamps has no bearing on the question of its liability to appellant. Was said contract based on a sufficient consideration in law? If it was, appellee is liable to appellant for his loss, regardless of the fact that it took the same care of appellant's stamps that it did of its own and those of its other depositors, and regardless of whether such care constituted negligence or not, for the contract was binding according to its terms.

The evidence shows that appellant was a regular customer of appellee, not only as a special depositor, but as a general depositor with a checking account. The court knows and will take judicial notice of what is a matter of common knowledge, that receiving and keeping for their customers special deposits of valuables of the character here involved is a large and very important part of the business of banks; the main purpose being to induce such depositors to keep with them their surplus moneys on checking, time deposit and savings accounts. In fact a bank, refusing its customers such facilities for the safe-keeping of their valuables, would be at a great disadvantage in competing with other banks furnishing such means.

There is a sufficient consideration for a promise if there be any benefit to the promisor or any loss, detriment, or inconvenience to the promisee. The consideration to be sufficient in law need not be adequate. The consideration

is sufficient if the person to whom the promise is made restrains from doing anything which he has the right to do, whether there be any actual loss to him or actual benefit to the party making the promise or not. 13 C. J., section 150, pp. 315, 316; Lawson on Contracts (2d Ed.), sections 98, 99, pp. 116, 117. The latter authority in section 99, page 117, illustrates the principle, thus:

"If A. promise B. to pay him five dollars if he will not eat a dinner or ten dollars if he will not wear his best coat for a day, B.'s abstaining from eating his dinner and refraining from wearing his coat is sufficient to support A.'s promise, for B. has a legal right to do both of these things. In a New York case, an uncle promised a nephew that if he would refrain from drinking liquor, using tobacco, swearing, and playing certain games for money until he came of age, he would pay him five thousand dollars. The nephew kept his side of the bargain, but, when sued for the money, the uncle claimed that the agreement was not founded on a valid consideration. But the court said: 'It is sufficient that he restricted his lawful freedom of action within certain limits upon the faith of his uncle's agreement.'"

In discussing the question as to what was necessary to constitute a sufficient consideration to uphold a promise, this court in *Byrne* v. *Cummings,* 41 Miss. 192, said: "Any benefit resulting to the party promising, by the act of the promisee, is a sufficient consideration. And it is not essential that there should be any adequacy in point of actual value, but a slight benefit will be sufficient.

"So also any loss, trouble or inconvenience sustained by the promisee, at the instance of the person making the promise, will be a good consideration, although such trouble, loss or obligation be of a trifling description, provided it be not utterly worthless in law and fact; and although the person making the promise obtain no benefit or advantage from the performance of the stipulated act by the promisee. These principles are to be found in every elementary treatise on the law of contracts."

And in *Magee* v. *Catching,* 33 Miss. 672, it was said:
"The law never looks to the amount of the consideration
to uphold a contract, so that there is a consideration, though
trivial, moving the parties.   Loss or injury to one of the
parties, or benefit to the other, may be sufficient considera-
tion."

Applying those principles to the case here: Appellant
had the right to remove his War Saving Stamps to another
bank than appellee's for safe-keeping.   Appellee induced
appellant to refrain from doing so by promising to remove
said stamps into its Corliss safe and there keep them.   It
seems clear that under the authorities referred to there
was sufficient consideration for said contract, and it bound
appellee to do what it therein agreed to do.   This identical
question was involved in *Tallahatchie Compress & Storage
Co.* v. *Hartshorn,* 125 Miss. 662, 88 So. 278, 17 A. L. R. 974.
That was a suit for damages by Mrs. Hartshorn against
the compress company for a breach of contract for the
storage by the latter of cotton belonging to her.   The
compress company was engaged in storing and compressing
cotton.   Its warehouse contained a brick compartment and
a wooden compartment.   Mrs. Hartshorn considered the
latter unsafe, and declined to store her cotton with the
compress company unless it was put in the brick compart-
ment, which the compress company agreed to do, but failed
to do; and a fire in the compress destroyed said wooden
compartment and along with it Mrs. Hartshorn's cotton,
which was therein stored, while the cotton in the brick
compartment was undamaged.   No contract was shown by
which Mrs. Hartshorn agreed to pay any more than the or-
dinary storage rate.   The court held that the contract in-
volved was one of special bailment, and the compress com-
pany, having breached it, was liable for Mrs. Hartshorn's
loss.   The court said, among other things:

"When a warehouseman agrees to store goods in a par-
ticular place and complies with his contract, he is, of course,
not liable for the loss of these goods, unless this loss be
due to his negligence.   This rule is elementary.   But when
he agrees to store goods in a particular place and stores

them in a different place, he has breached his contract of bailment, and is therefore responsible for the return of the goods or for their value.  He stores them in a different place at his own peril.  This rule is thus laid down in Elliott on Contracts, vol. 4, section 3100: 'The warehouseman must comply with the contract of storage.  If he has contracted to store goods in a specified warehouse, or in a particular place, and stores them in a different place, it is at his own risk, and he is liable for any injury which occurs, even without his own negligence.' "

In the case now before the court we have not a general contract of bailment, but a special contract of bailment. The care to be exercised by a bailee under a general contract of bailment is fixed by law, while the obligations of the parties under a special contract of bailment are fixed by the terms of the contract itself.  We think the authorities referred to by counsel touching the care to be exercised by a bailee for hire, as well as a gratuitous bailee under a general contract of bailment, are without application here; for this contract comes within the definition of neither of those.  By the bailment here involved appellant simply agreed to refrain from removing his War Saving Stamps from appellee's custody upon condition appellee would in the future keep them in its Corliss safe, which appellee agreed to do.  In our judgment this was a binding contract, and appellee is liable to appellant for the loss he sustained because of the breach thereof by the former.

*Reversed and remanded.*