SADLER, et al. *v.* LEE, et al.

No. 40604 December 16, 1957 98 So. 2d 863

*Young & Daniel,* Jackson, for appellants.

*Jackson & Ross,* Jackson; *Cohn, Hobbs & Hobbs,* Brookhaven, for appellees.

LEE, J.

Walter W. Sadler and William O. Sadler, Jr., by their petition against Mrs. Ellis Robertson Lee and others, sought to set aside the probate of an alleged last will and testament of Mrs. Lexie Lewis Sadler of date of September 15, 1949, under which the defendants are the alleged executrix and beneficiaries, and to have her last will and testament of date of September 29, 1942, established and admitted to probate as such, and that the petitioners, as beneficiaries thereunder, be adjudged the owners of one-third of the estate of the decedent.

The petition charged that Mrs. Lexie Lewis Sadler and husband, Dr. William Owen Sadler, on September 29, 1942, entered into a written contract whereby Mrs. Sad-

ler, who was without lawful issue, in consideration of Dr. Sadler's release of his right, under the law and especially Section 3561, Code of 1930, Section 668, Code of 1942, to renounce her will, agreed to bequeath to him, if he survived her, or to his issue, if he pre-deceased her, one-third of the assets of her estate at the time of her death. Exhibited thereto was a copy of the release, signed, witnessed and acknowledged, which is as follows:

### "RELEASE OF RIGHT TO RENOUNCE LAST WILL AND TESTAMENT

"THIS AGREEMENT, made and entered into on this, the 29th day of September 1942, by and between Dr. William Owen Sadler, hereinafter referred to as party of the first part, and his wife, Mrs. Lexie Lewis Sadler, hereinafter referred to as party of the second part.

### *W I T N E S S E T H* :

"That for and in consideration of the agreements and covenants hereinafter set forth, and others not herein mentioned, party of the first part does hereby and by these presents release his right to renounce the last will and testament of the party of the second part, and the rights conferred by the Laws of Mississippi and especially by Section 3561 of the Mississippi Code of 1930, Annotated, upon the limitations and conditions hereinafter contained.

"The consideration of this agreement is the fact that the party of the first part was born February 9th, 1875, and is now in his 68th year, and the party of the second part was born July 18th, 1874, and is now in her 69th year, and that both parties have heretofore been married, this being the second marriage of both parties; that the party of the second part has the earnest desire, which desire is shared by party of the first part, to insure, so far as may be humanly possible, the future comfort and well-being of the two sisters of the party of the second

part and their issue; that the party of the first part
recognizes that the party of the second part could do
that which is done by agreement hereunder, by her sepa-
rate act, by outright gift inter vivos, or by creation of a
trust at this time, which party of the second part would
do, except for this agreement; and for the further con-
sideration of the promise and covenant of the party of
the second part to support and maintain the party of
the first part, as at present, for the term of the natural
life of the party of the second part; and for the further
consideration of the fact that party of the second part
aided the two children of the party of the first part to
secure a college education, and other considerations, past
and present, between said parties, not herein set forth, all
of which are considerations for that done hereunder, the
party of the first part does agree with the party of the
second part that the party of the second part, shall, by
last will and testament, will to the party of the first part,
Dr. William Owen Sadler, husband of the party of the
second part, and Mrs. Lemmelia Lewis Robertson, sister
of the party of the second part, and Mrs. Lulia Lewis
Spiller, sister of the party of the second part, each an
un-divided one-third interest in and to the estate which
the party of the second part shall possess upon her death;
said will shall further provide that if any of the last three
mentioned parties shall predecease the party of the second
part, such party's one-third share shall be willed to his
or her issue, if such there be living at the time of the
second party's death; further, that this shall be done
by last will and testament, drawn simultaneously with
the execution of this agreement.

"The party of the first part covenants that he has
had read to him Section 3561 of the Mississippi Code of
1930, Annotated; that he understands that his wife's
estate is large, comparatively speaking, that the assets
of said estate are known well to him, that he fully un-
derstands his legal rights to enjoy at least one-half of

her estate, and the fact that this release of his right to renounce the will is voluntary, and need not be given, that he is under no coercion from any source, and that valuable considerations for this release move to him now.

"Therefore, in consideration of the premises and conditions herein expressed, the party of the first part does hereby affix his signature, and for himself, his heirs, administrators and personal representatives, expressly releases his right to renounce or contest the will of the party of the second part, and so releases his right to claim under the laws of the State of Mississippi any greater interest in and to said estate than the one-third interest herein provided for, and the party of the second part does hereunto affix her signature in token of her acceptance of the terms, limitations and agreements of this contract, expressly agreeing to make, prepare and publish her last will and testament as herein provided, leaving one-third of the assets of her estate at the time of her death to the party of the first part and to his issue, and one-third to each of her two sisters, and their issue, separately, as hereinabove provided for.

"Witness our signatures on the day and date above written."

The petition also charged that, on the same day, September 29, 1942, simultaneously with the execution by the parties of the foregoing mentioned contract, Mrs. Sadler made, declared and published her last will and testament; that said will devised and bequeathed one-third of all property of which she should die seized and possessed to her husband, Dr. Sadler, and in event he should predecease her, to his lawful issue; and that this was done pursuant to an agreement between her and her husband of the same date. A copy of the will was attached to the petition. The applicable provisions thereof, Items III and VIII, are as follows:

"I give, devise and bequeath unto my beloved husband, Dr. William Owen Sadler an undivided one-third of all

the property of which I shall die seized and possessed, real, personal or mixed. In the event that Dr. William Owen Sadler should predecease me, I give, devise and bequeath such one-third of the estate of which I shall die seized and possessed, real, personal or mixed, to the lawful issue of Dr. William Owen Sadler.**

"By the provisions of Item III of this will, I am devising to my husband one-third of my estate; this is done pursuant to the provisions of an agreement between the undersigned and her said husband, Dr. William Owen Sadler, executed immediately preceding the publication of this will, and also dated September 29, 1942."

The petition further charged that, on August 17, 1949, while the contract and will were still in effect, Dr. Sadler died, leaving Mrs. Lexie Lewis Sadler and the petitioners, his two sons, as his sole heirs at law; and that, on September 15, 1949, Mrs. Sadler attempted to revoke her last will and testament, dated September 29, 1942, and executed another last will and testament which failed to bequeath to the petitioners any part of her estate; and that Mrs. Sadler died on May 1, 1956, and her second will was admitted to probate.

The defendants, by their general demurrer, alleged that there was no equity on the face of the petition, and by their special demurrers, that there was no sufficient consideration for the contract, that the contract did not prevent Mrs. Sadler from thereafter disposing of her property because she did not promise to keep the will in effect, and that the parties to the contract recognized the ambulatory nature of the instrument and that she was entitled to revoke the first will.

Both the general and the special demurrers were sustained. When the petitioners declined to plead further, their petition was dismissed, and they appealed here.

The appellants contend that the demurrers admitted all facts well pleaded, together with the permissible inferences to be drawn therefrom; that their petition shows

an ample consideration to support the contract, and that it is therefore valid and enforcible; that the contract being valid, the last will and testament of Mrs. Sadler, dated September 29, 1942, is irrevokable, and the subsequent will, dated September 15, 1949, is fraudulent and void insofar as it attempts to defeat their rights; and that they are proper parties to enforce the contract.

On the contrary, the appellees contend that Dr. Sadler, by the contract, gave up only an expectation of a possibility of the exercise of a purely personal privilege that might ripen into some efficacy after Mrs. Sadler's death; that he gave up nothing that was in existence and that neither of the parties could know whether it would be in existence thereafter; that there was no valid consideration and the contract was therefore void and unenforcible; that the contract, being void, the will of September 29, 1942, was revoked by the will of September 15, 1949; and that the appellants therefore cannot enforce the contract.

As evidenced by the contract, Mrs. Sadler, at the time was faced with this situation: She had supported Dr. Sadler since their marriage. She desired to continue such support as long as he lived. She had aided his two sons, the appellants, in securing a college education. (She presumably was interested in them.) She had two sisters whose comfort and well-being she desired to insure. She could do what she was doing under the contract, either by gift or the creation of a trust, and would do so except for the contract. (Evidently, for reasons satisfactory to herself, she did not desire to do that.) Obviously if she made no will and died before Dr. Sadler, he would inherit her entire estate, since she had no children. If she made a will and died before Dr. Sadler, he could elect, under Section 668, Code of 1942, to renounce it and get one-half of her estate if she had not already bequeathed that much to him. She had a large estate. (Inasmuch as she did not choose to dispose of her prop-

erty by gift or creation of a trust, presumably she desired to maintain dominion over it during her lifetime.) She was 69 years of age and Dr. Sadler was 68. She evidently thought that there was a substantial, or at least some, chance that Dr. Sadler would survive her.

The question then is whether, under all these circumstances, as stated in the contract, the release by Dr. Sadler of the right, which he would have under the law if he survived his wife, to renounce her will and receive one-half of her estate, if she had not bequeathed that much to him, constituted a valid consideration to Mrs. Sadler for the execution of the contract.

 █ As said in Fornea v. Goodyear Yellow Pine Co., et al, 181 Miss. 50, 178 So. 914, ''The law is that parties have a right to make contracts not prohibited by law, in matters affecting their business and civil rights, * * ''. It was there recognized that because people are at times imprudent and are unjustifiably imposed upon, the court had been liberal in reviewing transactions where one party by reason of experience, knowledge and wisdom, takes the advantage of another. But the Court said, ''* * in the absence of fraud, deceit, or fiduciary relations of some kind, the court cannot relieve a person from the consequences of his acts merely because he has not acted prudently or diligently about his contracts or other matters.''

 █ 17 C. J. S., Contracts, Section 103(a), page 456, is in part as follows: ''The waiver of a right or forbearance, or promise to forbear to exercise the same is a sufficient consideration for a promise made on account of it. The right may be legal or equitable, certain or doubtful, * * * provided it be not utterly groundless, questions of motive being within this limit immaterial; * * *.''

Consideration may be said to be ''what is actually given or suffered and accepted for a promise * * * the price bargained and paid for a promise * * * something given in exchange for the promise.'' 12 Am. Jur., Contracts, Sec. 75, p. 568. ''Stated with greater elaboration,

sufficient consideration may consist either in some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other.'' Sec. 79, p. 570 thereof. ''Performance of an act by a promise which he is not legally obligated to perform is sufficient consideration for a promise, since it is a legal detriment irrespective of whether it is an actual detriment or loss to him.'' Sec. 80, p. 574 thereof. ''There is sufficient consideration for a promise if the promisee foregoes some advantage or benefit or parts with a right which he might otherwise exert. Forbearance from exercising a right or doing an act which one has a right to do is sufficient consideration where such forbearance is requested as consideration.'' Sec. 81, p. 576 thereof.

In contracts to make wills, Page on Wills, Sec. 1712, p. 847, says in part: ''As in other contracts, the parties may agree on the surrender or acquisition of any legal right as consideration; and the adequacy of such consideration is material only as an element of fraud or undue influence, or as one of the factors which the court will take into consideration in determining whether or not to grant specific performance.''

██ Corbin on Contracts, Vol. 1, Sec. 148, says in part ''A promise is not made insufficient as a consideration for a return promise by the fact that it is conditional, even though the condition is one that is purely fortuitous and may never happen at all. A promise that is subject to such a fortuitous condition is called an aleatory promise. It is a chance-taking promise, but it is not necessarily an illegal wager either under various statutes directed against gambling.''

In Miller v. Bank of Holly Springs, 131 Miss. 55, 95 So. 129, the desire of the bank to get the surplus moneys of customers for deposit and to compete with other banks affording protection was held to be a sufficient consideration for its promise to place the War Savings Stamps,

if not removed, in its Corliss safe. Since it did not carry out its promise and the stamps, not in this safe, were stolen when the bank was later burglarized, the bank was held to be liable. The bank's contention of no consideration and that it was a gratuitous bailee was rejected, the opinion saying: "There is a sufficient consideration for a promise if there be any benefit to the promisor or any loss, detriment, or inconvenience to the promisee. The consideration to be sufficient in law need not be adequate. The consideration is sufficient if the person to whom the promise is made refrains from doing anything which he has the right to do, whether there be any actual loss to him or actual benefit to the party making the promise or not." The opinion quoted the following excerpt from Byrne v. Cummings, 41 Miss. 192, to-wit: "Any benefit resulting to the party promising, by the act of the promisee, is a sufficient consideration. And it is not essential that there should be any adequacy in point of actual value, but a slight benefit will be sufficient.

"So also any loss, trouble or inconvenience sustained by the promisee, at the instance of the person making the promise, will be a good consideration, although such trouble, loss or obligation be of a trifling description, provided it be not utterly worthless in law and fact; and although the person making the promise obtain no benefit or advantage from the performance of the stipulated act by the promisee. These principles are to be found in every elementary treatise on the law of contracts." The following excerpt was also quoted from Magee v. Catchings, 33 Miss. 672, to-wit: "The law never looks to the amount of the consideration to uphold a contract, so that there is a consideration, though trivial, moving the parties. Loss or injury to one of the parties, or benefit to the other, may be sufficient consideration."

In Stanley v. Sumrall, 167 Miss. 714, 147 So. 786, while it was recognized that "forbearance to assert a claim, unenforceable either at law or equity, is not sufficient

consideration to support a promise,'' it was held that forbearance to assert a claim which might reasonably be doubtful is a sufficient consideration to support a promise.

■■■ It was true that the death of Dr. Sadler prior to the death of his wife would take away any right to renounce her will. But the parties could not look into the future and foresee which one would die first. In Strange v. State Tax Commission, (Miss.) 7 So. 2d 542, the right of a surviving brother to purchase stock for $10,000 was involved. Neither knew which one of them would be the survivor, but such survivor had the right to purchase the stock for that amount. The greatly increased value of the stock at the time of death was immaterial. It was held that, ''The fairness and adequacy of the consideration must be measured as of the time the contract was executed rather than at the time the option was exercised.''

If Dr. Sadler had survived his wife, and, in spite of the contract had sought to renounce the will in order to get one-half of the estate, it is inconceivable that any court would have permitted such a flagrant breach of a solemn contract. With his eyes open, he had released his right of renunciation—he had given it up, and he certainly would not be allowed to renege and take it back.

Upon the release of this right, Mrs. Sadler was enabled to limit, by her will, the inheritance of her husband and his issue to one-third of her estate. In pursuance of that agreement, she made a solemn contract to do so and followed it up simultaneously by the execution of the will of September 29, 1942. Neither should she be permitted to welsh on her contract. There was ample consideration for it.

■■■ The next question is whether the will, executed pursuant to the contract, could be revoked by Mrs. Sadler and thereby nullify the terms of the contract and defeat the rights of the appellants.

In Anding v. Davis, 38 Miss. 574, it was alleged that the elder Davis, heavily indebted to the elder Anding, executed the deed in question with the understanding that Anding would utilize the property and would execute and keep on hand a will, reconveying the property to the children of Davis on payment of the money which the deed was intended to secure; that the agreement was complied with; but that Anding either destroyed the will in his lifetime, or it had never been produced by his representative, if in existence. The Court said that if these allegations were true, as they had to be taken on demurrer, the destruction of the instrument or its suppression was such a fraud as entitled the complainants to relief at the hands of a court of equity. The Court said that the agreement between the parties "had the force of a contract; and the will, when executed, was, as to this property, irrevocable."

In the case of Price v. Craig, 164 Miss. 42, 143 So. 694, the Prices, husband and wife, and the Craigs, also husband and wife, by written contract agreed that the former by last will and testament or otherwise would cause the title of certain real estate to vest in Mrs. Craig at the death of the longest liver of the Prices in consideration of the Craigs' paying to the Prices, and to the survivor of them, $75 on the first day of each month thereafter. The Craigs fully performed their agreement. Mrs. Price died, and subsequently on January 9, 1931, T. P. Price, the survivor, executed the will, as contracted for. Eight days later he married again, but prior thereto he had told his intended bride of this contract with the Craigs. He died on February 7, 1931. His widow, by her bill, claimed one-half of his estate under Section 3562, Code of 1930, now Section 669, Code of 1942. Mrs. Craig made her answer a cross bill and prayed for the confirmation of her title. On final hearing, the original bill was dismissed and the relief prayed for in the cross bill was awarded. The Court held that, upon execution

of the contract, Mrs. Craig became the equitable owner of the property and that the Prices, except as to their life estate, were made trustees of the legal title; that the contract was irrevocable; and that the statutory rights of the widow did not attach where, in equity, the property belonged to another. The opinion in rejecting the contention that the will supplanted the contract, held that equity would require performance of the contract specifically even if no will had been made.

In Johnston v. Tomme, 199 Miss. 337, 24 So. 2d 730, it was held that, where the will was written in conformity and compliance with the agreement, "The testator had no right to revoke it, and its attempted revocation, if deliberately made, constituted a fraud upon her. It would be fatuous to hold, * * * that the testator complied with his agreement by the mere execution of the testamentary document, and that thereafter he was free to destroy it." This case was reaffirmed by Denson v. Denson, 203 Miss. 146, 33 So. 2d 311. See also Old Ladies Home Assn. v. Hall, 212 Miss. 67, 52 So. 2d 650, where it was said: "The performance by Mrs. Douglas was to be the devising of the property to appellee at her death. This type of contract is enforceable." See also Frierson v. Moorhead, 211 Miss. 811, 51 So. 2d 925.

Under the foregoing authorities, it is manifest that Mrs. Sadler could not, by revoking the will, escape the obligation of her contract.

The appellants, under the contract and original will, whereby they, as the issue of Dr. Sadler, would receive one-third of the estate, in event their father predeceased Mrs. Sadler, are entitled to recover. Hartford Accident & Indemnity Co. v. Hewes, 190 Miss. 225, 199 So. 93, and the cases there cited.

The allegations of the petition, since they must be taken as true on demurrer, made out a case for relief. Consequently the demurrers should have been overruled and the defendants, if they desired, permitted to answer.

For the error in sustaining the demurrers, the cause is reversed and remanded.

Reversed and remanded.

*Roberds, P. J.,* and *Hall, Kyle* and *Holmes, JJ.,* concur.