Covington Cadillac Company *v.* South Aire, Inc.

No. 42108          January 22, 1962          136 So. 2d 866

*Prewitt & Bullard,* Vicksburg, for appellant.

*Teller, Biedenharn & Rogers,* Vicksburg, for appellee.

LEE, P. J.

South Aire, Incorporated, successor to Jack Adams Aircraft Sales, Inc., instituted its suit against Covington Cadillac Company, a corporation, to recover an alleged balance due for the lease of an airplane. A copy of the lease was attached to the declaration as an exhibit. Under the terms thereof, the defendant leased the airplane for a period of sixty months at an agreed consideration of $45,358.05, payable in fifty-nine monthly

installments of $681.54 each, with a final installment of $5,147.19. If the lessee defaulted in any of the terms, etc., the lessor, at its option, could declare a termination of the contract in accordance with the terms thereof, and could take immediate possession of the airplane. The schedule of the amounts due for the various periods, upon exercise of the option, were set up in the contract. It was provided that the manufacturer's warranty was applicable, and the labor thereunder was to be performed by the lessor. The declaration charged that the defendant defaulted in the payment of two installments, aggregating $1,363.08; that the lease was terminated about July 18, 1960, and that thereupon the defendant was indebted to the plaintiff in the further sum of $2,977.10 under the stated schedule as to amounts due upon a termination of the lease; and that the plaintiff was required to incur expenses and attorney's fees, as provided for in the lease. There was a demand for judgment in the sum of $4,340.18 plus attorney's fees and expenses.

The answer of the defendant admitted the allegations as to the plaintiff and the execution of the lease contract, as shown by a copy attached to the declaration, but denied the other material allegations thereof. In the answer, it was also alleged that the defendant "would show that the aircraft leased by defendant was not as warranted and did not perform well and that the plaintiff and their predecessors wholly refused to perform on their warranties on said aircaft and that by agreement between the parties, on July 18, 1960, that the aircraft was returned to the plaintiff and your defendant, by agreement, accord and satisfaction, was released from any claim or claims under the lease agreement; that a copy of the release, dated July 18, 1960, is attached hereto as Exhibit "A" and made a part hereof the same as if copied in full herein. Defendant would show that by virtue of said release and agreement between the parties your defendant is not indebted to the plain-

tiff in any sum or sums whatsoever, and now having answered fully, your defendant prays to be dismissed with his costs." A copy of the alleged release was attached. It was in words and figures as follows:

"July 18, 1960

Johnny Covington,
2417 Clay Street
Vicksburg, Mississippi
Dear Mr. Covington:
With reference to 1959 Bonanza K-35, Serial No. D-6135 airplane on lease from Jack Adams Aircraft through Beech Acceptance Corporation Inc., we hereby acknowledge return of the airplane to us. Thereby, releasing you from any further liability on the above plane to Jack Adams Aircraft Sales, Beech Acceptance Corporation or South-Air Corporation.

SOUTH-AIR CORPORATION
ERWIN J. EKELAND
Erwin Ekeland"

The plaintiff, in its replication, said that the purported release was merely an acknowledgment of the receipt for the airplane; that, at the time it was presented and signed, it provided as follows:

"July 18, 1960

Johnny Covington
2417 Clay Street
Vicksburg, Mississippi
Dear Mr. Covington:
With reference to 1959 Bonanza K-35, Serial No. D-6135 airplane on lease from Jack Adams Aircraft through Beech Acceptance Corporation, Inc., we hereby acknowledge return of the airplane to us." However, after it was signed and delivered to Johnny Covington the same was altered without the knowledge and consent of the plaintiff by adding thereto the following: "Thereby,

releasing you from any further liability on the above plane to Jack Adams Aircraft Sales, Beech Acceptance Corporation or South Air Corporation.''

The replication further charged that, notwithstanding the alteration, the instrument released the defendant only from further liability and not from liability which had already accrued; that possession of the airplane had not been tendered as the result of an accord and satisfaction; and that the release was invalid for such purpose because of a lack of consideration.

At the close of all of the evidence, the plaintiff moved the court for a directed verdict in its behalf, assigning the grounds which it had set up in its replication. The court sustained the motion and the jury found for the plaintiff in the full amount sued for and fixed the amount of the expenses and attorney's fees. From the judgment entered thereon, the defendant appealed, assigning and arguing that such action of the court was reversible error.

Both Erwin J. Ekeland, sales manager and Vice President of the plaintiff, who signed the release, and William F. Quinby, President and General Manager of the plaintiff at the time, testified that, on July 18, 1960, they were on a tour of their territory; that they called on John Covington, President of Covington Cadillac Company, to pick up the two past due payments; that he informed them that he was not going to make the payments because of certain mechanical troubles with the airplane; that, upon being pressed for the reasons therefor, Covington mentioned only the air-speed indicator; that, when they found out he was not going to make the payments, they told him that they had no other alternative but to take up the airplane; that Covington told them he would have to have a receipt, showing that they had picked it up, and they agreed to that; that Covington prepared a receipt, but they would not accept it; that his secretary came in, and, after a dis-

cussion and agreement, that receipt was prepared as shown in the plaintiff's replication; and that Ekeland then signed such receipt. They further testified that the clause "Thereby releasing you from any further liability on the above plane to Jack Adams Aircraft Sales, Beech Acceptance Corporation or South Air Corporation" was not a part of the release, and that the same was added to the release after its execution.

On the contrary, Covington testified that he had experienced considerable trouble with the airplane; that he had made complaints about it; that, on March 4, 1960, he wrote the plaintiff's predecessor and detailed defects in the plane; that thereafter he called the company over the telephone and Robert Carr told him that they did not have a competent mechanic to do the work at that time and also asked him to wait until he had 100 hours on the plane, and they would send a factory man to attend to it. Sometime in May he called the company and talked to Mr. Ekeland and told him that he was going to terminate the contract — he was having trouble with the plane and several trips had to be grounded on account of the instruments; and that he was dissatisfied and wanted to get rid of it. Ekeland replied that he was sorry; that they had had a shake-up and change in ownership, and other things had gone wrong; that he asked Covington's help to find a purchaser for the plane. Covington then wrote a letter to the company on May 24th, to the attention of Mr. Ekeland, confirming their conversation about trying to transfer the plane, and, if that could not be done, then they would pick it up. He said that, on the day that Ekeland and Quinby came to see him, he again gave them details as to what was wrong with the plane and told them that he was afraid to use it. When they asked about taking the plane and fixing it, he reminded them that they had already tried twice to do so, but without success. When they suggested that another plane be substituted, he told them that he did

not have much faith in those planes; that he had had some near-accidents; and that he would rather get out from under it. They suggested that the parties agree on a satisfactory figure for the security payment to be utilized at a specific time. But Covington again told them "No", that he would rather sever his relations with South Aire, that it had been unpleasant, and he wanted to be "through". He told them "if you will give me a release on the plane we will just call it quits". Then Quinby said: "That's all right with me", turned to Ekeland and asked, "do you think that's all right", and Ekeland said, "yes, that's all right". At this juncture, Covington went to his secretary and dictated a release to Covington Cadillac Company. Ekeland and Quinby looked it over and said that they had better not sign it in that form because of the terminology. Covington then asked that one of them prepare it, and he called his secretary, Mrs. Majorie Avery, for that purpose. Ekeland dictated the release to her. She transcribed it, Ekeland signed the same, they left the release with Covington, and they picked up the airplane. No changes or alterations whatever were made after Ekeland's signature had been affixed. It was the original of which a copy had been attached to the defendant's answer.

Mrs. Marjorie Avery, a secretary who had been engaged in secretarial work since 1951, identified the original release as exhibited in the answer of the defendant, and testified that Ekeland dictated it, and that she typed it. She also identified the typewriter on which it was written.

With Covington and Mrs. Avery testifying that the exhibited release was executed in that form and Quinby and Ekeland denying the execution, obviously this sharp dispute in the evidence made an issue for determination by the jury.

But the appellee says that, even if an issue was made on that question, still the expression "Thereby releasing you from *any further liability* on the above plane to Jack Adams Aircraft Sales, Beech Acceptance Corporation or South-Air Corporation" released only from *any further liability,* and consequently it did not affect the liability already accrued. (Emphasis supplied).

It is difficult to see how, after the instrument was executed in that form, any liability whatever was preserved. This is especially true inasmuch as there were only three creditors and the liability to each of them was released.

But, in view of the evidence of the appellee that the instrument was only a receipt, and that there was a dispute as to the verbiage of the release, the issue in that particular was for the jury.

In the case of Hadad, et al v. Booth, et al, 225 Miss. 63, 82 So. 2d 639, the particular words of the contract were given. The Court remarked that the contract was crudely drawn and was somewhat ambiguous. Hence, for that reason, it was necessary to consider it in the light of all the circumstances and conflicting testimony. The opinion then said: "Whenever the terms of a contract are susceptible of more than one interpretation, or an ambiguity arises, or the intent and object of the contract cannot be ascertained from the language employed, parol evidence may be introduced to show what was in the minds of the parties at the time of making the contract. The ambiguity may arise from words which are uncertain when applied to the subject matter of the contract. 20 Am. Jur., Evidence, Sec. 1147; Traders' Insurance Company v. Edwards Post, 86 Miss. 135, 38 So. 779 (1905). 53 Am. Jur., Trial, Sec. 266 states: 'Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure, and its construction depends upon other and extrinsic facts in connection with what is

written, the question of interpretation should be submitted to the jury, under proper instructions.' It is for the jury to determine what is the agreement of the parties, where there is uncertainty in a written contact because of ambiguity or doubtfulness. 53 Am. Jur., Secs. 267, 269; Harris v. Williams, 43 So. 2d 364 (Miss. 1949); Firsby v. Grayson, 216 Miss. 753, 63 So. 2d 96 (1953). It was a jury issue as to whether Booth's contract obligated him to install the heater.''

■■ ■ In regard to the question of whether or not there was a valid consideration for the execution of the release, it must be kept in mind that Covington testified at length and in great detail concerning the condition of the airplane. If the jury believed his evidence, it was sufficient to show such a defective condition as might justify the jury in finding a failure of warranty to such an extent that the airplane's value was greatly depreciated. Under such circumstances, the defendant could, with propriety, have had an action thereon. Needless to say, the forbearance to assert such a right could constitute a sufficient consideration for the execution of the release.

The case of Sadler v. Lee, 232 Miss. 349, 98 So. 2d 863, gives considerable light on this question. In that case, the Court held that the husband's release of his right to renounce his wife's will upon her agreement to bequeath to him, if he survived her, or to his issue, if he predeceased her, one-third of the assets of her estate at the time of her death, was a sufficient consideration to require performance of the contract by the wife. In reaching that result, the opinion said:

''17 C. J. S., Contracts, Section 103(a), page 456, is in part as follows: 'The waiver of a right or forbearance, or promise to forbear to execise the same is a sufficient consideration for a promise made on account of it. The right may be legal or equitable, certain or doubtful,

* * * provided it be not utterly groundless, questions of motive being within this limit immaterial; * * *.'

''Consideration may be said to be 'what is actually given or suffered and accepted for a promise * * * the price bargained and paid for a promise, * * * something given in exchange for the promise.' 12 Am. Jur., Contracts, Sec. 75, p. 568. 'Stated with greater elaboration, sufficient consideration may consist either in some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other.' Sec. 79, p. 570 thereof. 'Performance of an act by a promise which he is not legally obligated to perform is sufficient consideration for a promise, since it is a legal detriment irrespective of whether it is an actual detriment or loss to him.' Sec. 80, p. 574 thereof. 'There is sufficient consideration for a promise if the promisee foregoes some advantage or benefit or parts with a right which he might otherwise exert. Forbearance from exercising a right or doing an act which one has a right to do is sufficient consideration where such forbearance is requested as consideration.' Sec. 81, p. 576 thereof.'' The following language from Miller v. Bank of Holly Springs, 131 Miss. 55, 95 So. 129, was also quoted to-wit: ''There is a sufficient consideration for a promise if there be any benefit to the promisor or any loss, detriment, or inconvenience to the promisee. The consideration to be sufficient in law need not be adequate. The consideration is sufficient if the person to whom the promise is made refrains from doing anything which he has the right to do, whether there be any actual loss to him or actual benefit to the party making the promise or not.'' Again, the following quotation from Byrne v. Cummings, 41 Miss. 192, was set out: ''Any benefit resulting to the party promising, by the act of the promisee, is a sufficient consideration. And it is not essential

that there should be any adequacy in point of actual value, but a slight benefit will be sufficient.

"So also any loss, trouble or inconvenience sustained by the promisee, at the instance of the person making the promise, will be a good consideration, although such trouble, loss or obligation be of a trifling .description, provided it be not utterly worthless in law and fact; and although the person making the promise obtain no benefit or advantage from the performance of the stipulated act by the promisee. These principles are to be found in every elementary treatise on the law of contracts." The following quotation from Magee v. Catchings, 33 Miss. 672, was also cited with approval: "The law never looks to the amount of the consideration to uphold a contract, so that there is a consideration, though trivial, moving the parties. Loss or injury to one of the parties, or benefit to the other, may be sufficient consideration." Finally, the opinion cited Stanley v. Sumrall, 167 Miss. 714, 147 So. 786, and pointed out that the Court in that case held that "forbearance to assert a claim which might reasonably be doubtful is a sufficient consideration to support a promise."

██ █ From what has been said above, it is obvious that the trial court should not have given the directed verdict. With the sharp dispute in the evidence, the issues should have been submitted to the jury under proper instructions. The cause is therefore reversed and remanded for a new trial.

Reversed and remanded.

*Arrington, McElroy, Rodgers* and *Jones, JJ.,* concur.