## Wasilko *v.* Home Mutual Casualty Company, Appellant.

Argued March 21, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Paul Silberblatt*, with him *Bell, Silberblatt & Swoope*, for appellant.

*Joseph J. Lee,* with him *William U. Smith,* for appellees.

OPINION BY SPAULDING, J., June 16, 1967:

This is an appeal from a judgment against Home Mutual Casualty Company as insurer under a "non-owner" operator's motor vehicle liability policy.

On June 29, 1963, Anthony Murawski and Constance Wasilko, while riding in an automobile owned by Bernard Murawski, were involved in a collision with a car driven by Harry L. Jukes. The three plaintiffs obtained judgments against Jukes and writs of execution were returned unsatisfied. Plaintiffs instituted suit against Home Mutual, alleging the company was liable for the judgments against Jukes. A jury trial resulted in verdicts for plaintiffs.

At the time of the accident, Jukes was operating the motor vehicle with a restricted license to drive, under the Motor Vehicle Safety Responsibility Provisions of The Pennsylvania Vehicle Code of April 29, 1959, P. L. 58, 75 P.S. §1421, which limited his driving to "non-owned" vehicles.[1] He was insured under a policy issued by defendant company containing this express limitation.[2]

The company contends it is not liable because Jukes was the actual owner of the vehicle involved in the accident, although title registration was in the name of his mother, Mrs. Sarah Lujack. In Pennsylvania, a certificate of title is merely evidence of ownership of a motor vehicle and is not conclusive. *Hertz Cor-*

---

[1] Section 1421(c) provides: "Such operator's policy of liability insurance shall insure the person named, as insured, therein against loss from liability imposed upon him by law for damages arising out of the use, by him, of any motor vehicle, not owned by him. . . ."

[2] The policy provides: "The insurance does not apply . . . to any automobile owned by the named insured. . . ."

*poration v. Hardy*, 197 Pa. Superior Ct. 466, 178 A. 2d 833 (1962); *Weigelt v. Factors Credit Corporation*, 174 Pa. Superior Ct. 400, 101 A. 2d 404 (1953).

The evidence relating to the title of the car operated by Jukes is uncontradicted. He purchased it June 12, 1963 with his own funds from a used car dealer near his home in Bellefonte, Pennsylvania. On June 14, he went to the home of his 72 year old mother in Brisbin, Pennsylvania, to have the reassignment of the certificate of title executed in her name. Mrs. Lujack testified that: he told her he wanted to put the car in her name rather than his wife's so that his wife could not sell it; he wanted to get the car for Mrs. Lujack's grandson;[3] because of arthritis she could not sign the papers and her son signed her name in her presence; he read none of the papers to her; and no notary public was present when her purported affidavit was taken.

She further testified that: her son was married and had not lived with her for approximately twelve years; she had never owned or operated a motor vehicle; never had a driver's license; did not buy the automobile in question; did not pay for it or for any of its gasoline, oil, or maintenance; prior to the accident the car was kept by her son at his residence in Bellefonte; the only time prior to the accident the car was ever at her residence was when Jukes visited her; she rode in the car on only one occasion and had no control over its use. After the accident, the car was brought to the Lujack house and stored until sold to a junkman. Jukes made the arrangements for the sale and was present when the junkman took the car. Mrs. Lujack signed no papers and received no money from the sale.

---

[3] Richard Jukes, a nephew of Harry Jukes, was 14 years old at the time.

Under these uncontravened facts, we cannot agree with the trial court that "the most that was established by the testimony of the defendant was a strong suspicion of actual ownership in [Jukes]." All the elements of ownership—the use, benefit, possession, control, responsibility for, and disposition of the automobile—were clearly vested in Jukes.

We hold that Jukes was the actual owner of this motor vehicle.

The type of operator's policy issued by the defendant company to Jukes was carefully considered by this Court in *Kyle v. McCarron*, 201 Pa. Superior Ct. 403, 192 A. 2d 253 (1963). We there held that coverage afforded by a "non-owner's" policy could not be extended to apply to vehicles owned by the named insured. Courts in other jurisdictions have similarly held that where a statute provides coverage shall extend to an insured operating vehicles "not owned by him," or words to that effect, coverage is not afforded for damage arising from his operation of a vehicle which he owns, regardless of whether it is registered in his or another's name. *Booth v. American Casualty Company*, 261 F. 2d 389 (4th Cir. 1958) (title in sister's name); *Liberty Mutual Insurance Company v. American Automobile Insurance Company*, 220 Md. 497, 154 A. 2d 826 (1959) (title in father's name); *Yoshida v. Liberty Mutual Insurance Company*, 240 F. 2d 824 (9th Cir. 1957) (title in conditional vendor); *Employers Liability Assurance Corporation v. Roux*, 98 N.H. 309, 100 A. 2d 416 (1953) (title in sister's name).

To condone the attempt by Jukes to avoid his obligations under the law would frustrate the purposes of the Motor Vehicle Safety Responsibility Act. Since Jukes was the actual owner of the automobile in question, he was not covered under the "non-owner" liability policy.

Plaintiffs also contend the insurance company's conduct subsequent to the accident amounts to a waiver and thus prevents it from asserting the "non-ownership" provision as a defense.

The company engaged an adjuster to investigate the claims of the plaintiffs and a third party, Austin J. Carson, whose automobile was involved in the same accident. The adjuster settled Carson's claim for property damage and obtained a release dated July 26, 1963. The release stated, inter alia: "It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released, and that said releases deny liability therefor and intend merely to avoid litigation and buy their peace." During the adjuster's investigation, he obtained written statements and medical authorization from some of the present plaintiffs. On August 1, 1963, the adjuster wrote to Bernard Murawski advising him that settlement could not be made for his vehicle until settlement had been made with the other injured parties, that the adjuster had secured a salvage bid for the vehicle, and stated: "on subrogation, we will honor your claim, but credit will be taken for this bid". There is no evidence that the insurance company or the adjuster had any knowledge at this time that Jukes owned the vehicle he was driving. On September 23, 1963, the adjuster wrote Bernard Murawski stating: "Our investigation into the above accident involving you and our . . . insured [Jukes] has been completed. This investigation has revealed that we did not cover the car involved in the accident. Therefore, we are not interested in the settlement of your property damage claim."

In order to establish a waiver, the evidence must show the acts of the insurance company constituted a

voluntary, intentional relinquishment of a known right and the insurer had full knowledge of all pertinent facts. 16 Appleman, Insurance Law §9081. Regardless of whether the evidence was sufficient to establish these elements of waiver in this case, the ordinary doctrine of waiver cannot be applied to the "non-owner" provisions of an operator's liability policy. The rule is well established that conditions going to the coverage or scope of a policy of insurance, as distinguished from those furnishing a ground of forfeiture, may not be waived by implication from the conduct or action of the insurer. The doctrine of implied waiver is not available to bring within the coverage of an insurance policy, risks that are expressly excluded therefrom. 16 Appleman, Insurance Law §9090 at 630; 45 C.J.S., Insurance §674 at 616 n.36. In Pennsylvania, the doctrine of waiver or estoppel cannot create an insurance contract where none existed.[4] *Donovan v. New York Casualty Company*, 373 Pa. 145, 94 A. 2d 570 (1953); *Antone v. New Amsterdam Casualty Company*, 335 Pa. 134, 6 A. 2d 566 (1939).

Nor is this a situation where the coverage of an insurance contract is enlarged by reason of an estoppel. "To work an estoppel, there must be such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon. Accordingly, an insurer is not estopped to deny liability on a policy where the plaintiff was not misled by the defendant's conduct." 16 Appleman, Insurance Law §9088 at 626.

---

[4] This conclusion is further supported by the provisions of The Vehicle Code establishing two distinct types of motor vehicle liability coverage and from evidence at trial that the rate structure for operator's liability policies is less than that for owner's liability policies. These considerations were fully discussed in *Kyle v. McCarron*, supra.

Nothing in the instant case indicates prior knowledge on the part of the insurance company or that plaintiffs relied on the company's conduct to their detriment. The company's adjustment of Carson's claim was certainly Carson's good fortune, but none of the other parties were prejudiced thereby. "The exercise of generosity does not create a binding obligation for its continuance. . . ."[5] Furthermore, since the law favors the compromise and settlement of claims to avoid litigation, it would be unwise to inhibit insurance companies from promptly adjusting claims by increasing the peril of doing so.

Decision reversed.

---

[5] *Myers v. Metropolitan Life Insurance Company*, 152 Pa. Superior Ct. 507, 516, 33 A. 2d 253 (1943).