## Bailey v. Capital Blue Cross & Pennsylvania Blue Shield

*George F. Douglas, Jr.,* for plaintiff.
*Mary Ann Forbes,* for defendants.

SHEELY, *P.J.,* March 16, 1984—This case is before us on cross-motions for summary judgment. Initially, we must address the propriety of entering judgment given the procedural posture of the case. On October 4, 1983, the State Farm Mutual Automobile Insurance Company filed a petition to intervene in this case. Subsequently, the parties filed an answer to the petition and a reply to the answer, but no hearing has ever been held to consider the merits of the petition as the Rules would seem to require.

See Pa.R.C.P. 2328. However, on February 27, 1984, this court received correspondence from counsel for State Farm indicating that any right to a hearing on the petition was being waived.

We choose to resolve the matter by simply accepting the allegations of the petition as true and deciding the intervention issue on that basis. We deny the petition to intervene, even accepting the truth of the facts as alleged. There are two reasons for our decision. First, State Farm has no right to intervene under any of the provisions of Rule 2327. State Farm argues that it comes within part (3) of the Rule allowing intervention by one who could have been a party to the action when it was commenced. The instant action arises out of an insurance contract between plaintiff and the defendants with which State Farm has nothing to do. State Farm could not be a party to this suit; therefore, Rule 2327(3) does not apply. Second, even if State Farm qualified under Rule 2327, we would deny intervention under Rule 2329 because the "interest of [State Farm] is already adequately represented" by plaintiff, Marian A. Bailey. Pa.R.C.P. 2329(2). Our disposition of the petition to intervene closes the pleadings in this case as is required before we may consider a motion for summary judgment under Rule 1035.

Counsel have submitted a stipulation of facts to be considered along with the remainder of the record in the decision of the motions. Briefly, the facts developed in the stipulation are as follows: Marian Bailey, plaintiff in this action, purchased a health insurance policy from defendants, Capital Blue Cross and Pennsylvania Blue Shield. During the period in which she was covered under this health insurance policy, Bailey also had a No-fault Automobile Insurance Policy with State Farm.

Bailey suffered injuries when she was struck by an automobile on December 8, 1978. Her injuries have required expensive medical treatment ever since the accident. Prior to September 22, 1981, all of Bailey's medical expenses were reimbursed twice, once by the defendants, Blue Cross and Blue Shield, and once by State Farm.

On January 27, 1982, the Social Security Administration informed Bailey of her eligibility for Medicare benefits. This eligibility had a twofold effect on Bailey's insurance coverage. First, it rendered her ineligible to receive further payments from State Farm for any medical expenses resulting from the accident that were paid by Medicare.* Second, Bailey's eligibility for Medicare modified her coverage under the policy with Blue Cross and Blue Shield such that Blue Cross and Blue Shield coverage became supplemental to Medicare, paying only that portion of the cost over and above what Medicare paid.

During a three week period beginning July 12, 1982, Bailey underwent medical treatment at the Hershey Medical Center. The bill for this treatment amounted to $13,611.98. Bailey had also incurred $465.50 in various other medical expenses during the period from March through September of 1982. Bailey sought reimbursement of these costs as she had in the past, this time in the amount of $14,077.48 ($13,511.98 + $465.50). The stipula-

---

* Section 206 of the Pennsylvania No-Fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §1009.206, provides that Medicare benefits are primary benefits. This means that no-fault insurers have no obligation to reimburse an individual for any portion of medical costs he "receives *or is entitled to receive*" from Medicare. (Emphasis added.)

tion discloses that Blue Cross and Blue Shield processed these bills "for payment through Medicare" and that "the balance of the claim not paid by Medicare was paid by Blue Cross and Blue Shield."

Bailey, unaware of the effect of her eligibility for Medicare benefits on the liability of her no-fault carrier to pay medical benefits a second time, also submitted a claim to State Farm. State Farm paid her $14,077.48, the full amount of the bills. State Farm subsequently discovered that Bailey's bills had been paid in part by Medicare and that it had no obligation under either the No-fault Act or its policy with Bailey to reimburse her for that portion of the bills paid by Medicare. Upon realizing its mistake, State Farm filed suit against Bailey to collect the money it erroneously paid out. That suit was instituted at No. 2902 Civil 1983 and currently remains in the pleading stage.

Bailey instituted the present action in assumpsit on April 28, 1983. Bailey's theory of recovery is set forth in the final paragraph of the complaint as follows:

"Since the defendants did not explain to their insured during the year of 1982, that she would not have Blue Cross and Blue Shield coverage, if she elected Medicare, and since the defendants continued to bill the plaintiff for Blue Cross and Blue Shield coverage throughout 1982, which the plaintiff paid, it is prayed that the defendants be directed to pay $14,077.48 to the plaintiff, with which she can reimburse the State Farm Mutual Automobile Insurance Company, and that she also be reimbursed the $2,490.95 for the September 27, to October 2, 1982, hospitalization at the Hershey Medical Center."

It is clear from the briefs in this case that Bailey's theory of recovery relies almost exclusively on the

case of Hionis v. Northern Mutual Insurance Company, 230 Pa. Super. 511, 327 A.2d 363 (1974). In that case the Pennsylvania Superior Court held that in order for an insurer to take advantage of an express exclusion of coverage in a policy it must establish (1) that the insured had actual knowledge of the exclusion and (2) that the insured understood the effect of the exclusion. The Hionis rule endured for nearly ten years apparently escaping any direct review by the Pennsylvania Supreme Court. See Selected Risks Insurance Co. v. Bruno, 718 F.2d 67 n.3 (3rd Cir. 1983). In a recent decision, however, the Supreme Court rejected the Hionis rule and overruled that case. In Standard Venetian Blind Co. v. American Empire Insurance, ____Pa. ___, 469 A.2d 563 (1983), Chief Justice Roberts stated:

We believe that the burden imposed by Hionis fails to accord proper significance to the written contract, which has historically been the true test of parties' intentions. By focusing on what was and was not said at the time of contract formation rather than on the parties' writing, Hionis makes the scope of insurance coverage in any given case depend upon how a fact finder resolves questions of credibility. Such a process, apart from the obvious uncertainty of its results, unnecessarily delays the resolution of controversy, adding only unwanted costs to the cost of procuring insurance. Thus, Hionis which would permit an insured to avoid the application of a clear and unambiguous limitation clause in an insurance contract is not to be followed. Id. at 469 A.2d at 567. The views of our Supreme Court could not have been articulated with more clarity. Plaintiff's theory of recovery, which depended upon the continuing validity of Hionis, has been completely undercut. The stipulation indicates that the provisions of the insurance policy issued by Blue

Cross and Blue Shield to Bailey were clear and unambiguous. Therefore, those provisions should apply even if no representative of Blue Cross and Blue Shield ever personally explained them to Bailey.

Even if Hionis were still good law, Bailey's suit would fail. The reason is fundamental. The difficult position Bailey now finds herself in arose not by reason of any provision in her policy with Blue Cross and Blue Shield, but rather by operation of law under the No-fault Act. Section 206 of that Act provides that the no-fault carrier is relieved of the duty to reimburse the insured for any medical bills paid by Medicare. Section 206 goes further to provide that when an insured becomes eligible for Medicare, a no-fault carrier is not liable to pay that portion of medical costs that would be paid by Medicare even if the insured did not in fact opt to join the Medicare plan.

Blue Cross and Blue Shield certainly had no obligation to explain to Bailey the effects of the No-fault Act. Defendants agreed only to provide a specified amount of health insurance coverage to Bailey. The stipulation indicates no dispute that the defendants paid Bailey's medical bills as agreed. This payment was all the policy anticipated, and we refuse to hold Blue Cross and Blue Shield responsible for what was in effect Bailey's own mistake of recovering money from her no-fault carrier to which she had no legal claim.

Nor do we consider it significant that the defendants did not promptly adjust Bailey's premium as they should have after she became eligible for Medicare benefits. Blue Cross and Blue Shield surely owe Bailey the amount of the premium overcharge. They have already offered to pay her this amount, but they do not owe her what amounts to a second

recovery of her medical expenses. Bailey could never have purchased this type of double coverage from the defendants initially. To expect such double reimbursement from one insurer is unreasonable.

Finally, we do not believe that defendant's delay in lowering the monthly premium charge after Bailey became eligible for Medicare constitutes a waiver of the policy provisions. Waiver is the "voluntary, intentional relinquishment of a known right." Wasilko v. Home Mutual Casualty Co., 210 Pa. Super. 322, 328, 232 A.2d 60, 63 (1967). There is no evidence in this record showing such an intention on the part of defendants. Neither can any kind of estoppel be worked against defendants where, as here, Bailey's alleged injury resulted not from any actions by Blue Cross and Blue Shield but rather by operation of section 206 of the No-fault Act as described above. "[A]n insurer is not estoppel . . . where the plaintiff was not misled by the insurer's conduct." Wasilko v. Home Mutual Casualty Co., 210 Pa. Super. 322, 328, 232 A.2d 60, 63 (1967) (quoting 16 Appleman, Insurance Law §9088 at 626).

## ORDER OF THE COURT

And now, March 16, 1984, for the reasons appearing in the opinion filed this date, plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted, and we hereby enter judgment in favor of defendants.