[No. B029135. Second Dist., Div. Four. Dec. 20, 1988.]

ALLSTATE INSURANCE COMPANY, Plaintiff and Respondent, v. LEON THOMPSON et al., Defendants and Appellants.

**COUNSEL**

White & Hoodack, Lawrence Hoodack and Elizabeth Ralston for Defendants and Appellants.

Mavridis & Associates and Robert E. Long for Plaintiff and Respondent.

## OPINION

McCLOSKY, J.—Defendants Leon Thompson and Mary Thompson appeal from the judgment in favor of plaintiff Allstate Insurance Company (Allstate).

## FACTS

Allstate initiated this declaratory relief action to contest coverage for the Thompsons' wrongful death claim. That wrongful death claim arose from an automobile collision in which one Jon Goyette driving a 1967 Camaro automobile struck and killed the Thompsons' son, Curtis.[1] At the time of the collision, Allstate had issued two insurance policies to the Goyette household. It had issued an "Allstate Deluxe Homeowners Policy" purporting to indemnify Jon's parents—Paul Goyette and Nancy Goyette—from liability and an automobile policy to Paul Goyette only. Following the collision, Allstate issued a "recreational package policy." While Allstate's complaint for declaratory relief concerned coverage under all three of these policies, the Thompsons' sole focus on appeal is whether coverage exists under the automobile policy.

When the collision occurred, Jon Goyette, a 17-year-old minor, was residing with his parents. He had obtained the Camaro he was driving four to six weeks before the collision in a three-way transaction involving his brother, David Goyette, and one John Wright. Mr. Wright exchanged the Camaro and a pick-up truck for another vehicle which was owned by David. Jon then agreed to pay David $1,500 for the Camaro of which he paid $500. Neither John Wright nor Jon Goyette were the registered owners of the Camaro. Instead, during all relevant periods the name of a prior owner, one David McIntosh, remained on the registration.

Following his acquisition of the Camaro, Jon stored it and worked on it at his family residence. At this time he did not have a driver's license. Although Jon was admonished by his parents not to drive without a license, he drove the Camaro at least one time prior to the collision and he was driving it when he collided with Curtis Thompson.

At trial, it was undisputed that the subject Camaro was not listed on the declarations page of the Allstate automobile policy. Accordingly, coverage under that policy turned on whether the Camaro fell within the policy provision providing coverage for "a non-owned auto used by [the named insured] or a resident relative with the owner's permission." That provision

---

[1] Pursuant to the Thompsons' request, we take judicial notice of their wrongful death action denominated Thompson et al. v. Paul Goyette et al., Los Angeles Superior Court number NVC 1163.

stated: "This auto must not be available or furnished for the regular use of an insured person."

After a trial by the court sitting without a jury, the court rendered a judgment for Allstate. In its statement of decision the court listed three reasons why the Camaro did not fall within the "nonowned auto" provision: 1. Jon was the owner of the Camaro and therefore it was not a "nonowned" auto.

2. Even if it was "nonowned" Jon was using the Camaro without the owner's permission.

3. The Camaro was available or furnished for the regular use of an insured person.

## CONTENTIONS

On appeal the Thompsons contend: "The trial court erred in finding that the 1967 Camaro was owned by Jon Goyette.

"The trial court erred in finding that Jon Goyette did not have permission to use the 1967 Camaro.

"The trial court erred in finding that the 1967 Camaro was available or furnished for the regular use of Jon Goyette."

## DISCUSSION

■ Since each of the three bases for the trial court's determination of noncoverage under the automobile policy independently supports the judgment, we must affirm if we conclude the trial court did not err on any one of those bases. (See 9 Witkin, Cal Procedure (3d ed. 1985) Appeal, § 269, p. 277.)

As explained above the Thompsons claimed Jon Goyette's Camaro was covered under that provision of the Allstate auto policy which provides coverage for a "non-owned auto used by the [the named insured] or a resident relative with the owner's permission."

■ The trial court concluded that the Camaro was not insured under this provision in part because it was not a "nonowned auto." On appeal the Thompsons contend that as a matter of law "[t]he trial court erred in finding that the 1967 Camaro was owned by Jon Goyette." The Thompsons argue that because Jon Goyette was an unlicensed minor when he

purported to purchase the Camaro that purchase violated Vehicle Code section 15500 and was therefore void.[2] Accordingly, the Thompsons urge that Jon Goyette did not own the Camaro at the time of the collision.

As we now explain, the fact that it may have been unlawful for Jon Goyette to purchase the Camaro does not negate his status as "owner" of that automobile for purposes of coverage under the subject automobile policy.

We interpret the subject policy in view of several well-established maxims of construction.

First "[a]ny ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. If semantically permissible, the contract will be given such construction as will fairly achieve its manifest object of securing indemnity to the insured for the losses to which the insurance relates." (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].) "The courts will not[, however,] indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed." (*Farmers Ins. Exch.* v. *Harmon* (1974) 42 Cal.App.3d 805, 809 [117 Cal.Rptr. 117].) "In the absence of circumstances indicating a contrary intention, words in an insurance policy are to be used in their plain, ordinary and popular sense rather than according to their strict legal meaning. [Citations.]" (*Jarrett* v. *Allstate Ins. Co.* (1962) 209 Cal.App.2d 804, 811 [26 Cal.Rptr. 231]; accord, *Delgado* v. *Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262 [203 Cal.Rptr. 672].)

" 'The word "owner," as applied to motor vehicles, is commonly understood to designate the person in whom title is vested either as legal [or equitable] owner or as registered owner.' [Citations.]" (*Bohannon* v. *Aetna Casualty & Surety Co.* (1985) 166 Cal.App.3d 1172, 1176 [212 Cal.Rptr. 848].) Thus "[f]or the purpose of determining liability insurance coverage, there may be several 'owners' of an automobile." (*Allstate Ins. Co.* v. *Chinn* (1969) 271 Cal.App.2d 274, 278 [76 Cal.Rptr. 264].)

In *Chinn*, coverage was claimed under a nonowned automobile provision, on the ground that the insured's son who purchased the automobile did not register it with the Department of Motor Vehicles as required by the Vehicle Code and therefore was a "nonowner" under the policy.

---

[2] Vehicle Code section 15500 provides: "It is unlawful for any minor who does not possess a valid driver's license issued under this code to order, purchase or lease, attempt to purchase or lease, contract to purchase or lease, accept, or otherwise obtain, any vehicle of a type subject to registration."

In rejecting this assertion the *Chinn* court relied on cases which hold that "'the transferee in possession of a motor vehicle is the owner thereof—although possibly not the only owner—under the terms of a liability insurance contract.' [Citations.]" (271 Cal.App.2d at p. 279.)

Thus, the *Chinn* court concluded the automobile there involved was "owned" by the insured's son because he was the buyer in possession despite the fact that due to his failure to comply with the registration requirements the seller also remained the "owner."

■ The Thompsons' attempt to distinguish *Chinn* on the ground that in *Chinn* the minor who purchased but failed to register the automobile was licensed. Thus, they argue the purchase in *Chinn* was not voided by the provision of Vehicle Code section 15500. What appellants fail to appreciate, however, is that a buyer's failure to comply with the registration requirements of the Vehicle Code also render the purported sale void. (3 Witkin, Summary of Cal. Law (9th ed. 1987) Sales, § 228, p. 180.) *Chinn* and the cases on which it relies, based their analysis on whether a vehicle is "owned" under the terms of a policy as dependent on whether the buyer assumed the indicia of ownership, i.e., possession and control rather than the enforceability of the sales contract by which he obtained possession.

We are unable to discern any meaningful distinction between a sale void because of the buyer's failure to comply with vehicle registration requirements and a sale void because the buyer is unlicensed. In either case the buyer's status as owner of the vehicle for purposes of insurance coverage turns on his or her possession and control. In the present case the Thompsons do not contend that Jon Goyette did not assume possession or control of the Camaro. Instead, they argue only that the agreement by which he obtained possession of the Camaro was void. Under the reasoning employed by the court in *Chinn*, we conclude that the so-called "voidness" of the agreement is not alone sufficient to preclude Jon from being the "owner" of the Camaro under the Allstate policy.

■ The Thompsons next urge that excluding coverage on the basis that Jon Goyette "owned" the Camaro would undermine the Legislature's purpose in enacting Vehicle Code section 15500. The appellants assert that that purpose was to "protect innocent third parties from the careless use of automobiles by untrained minors for whom no one is financially responsible."

■ Even accepting, without deciding, that analysis of the purpose behind Vehicle Code section 15500 as correct, that alone is an insufficient basis on which to find coverage. As appellants acknowledge "an insurance

company can limit the coverage of a policy issued by it as long as such limitation conforms to the law and is not contrary to public policy; when it has done so the plain language of the limitation must be respected. [Citations.]" (*Public Employees Ins. Co.* v. *Mitchell* (1985) 173 Cal.App.3d 814, 817 [219 Cal.Rptr. 129].)

■ The provisions of Insurance Code section 11580.05 defeat appellants' assertion that the public policy codified in Vehicle Code section 15500 mandates coverage under a parent's automobile policy when their resident-child unlawfully purchases an automobile and then unlawfully drives it. Insurance Code section 11580.05 provides in pertinent part that "the public policy of this state in regard to provisions authorized or required to be included in policies affording automobile liability insurance or motor vehicle liability insurance issued . . . in this state shall be as stated in [Insurance Code sections 11580 to 11589.05. *These sections express*] *the total public policy of this state respecting the content of such policies, . . .*" (Italics added.)

As the court explained in *California State Auto. Assn. Inter-Ins. Bureau* v. *Gong* (1984) 162 Cal.App.3d 518, 529 [208 Cal.Rptr. 649]: "[T]here is nothing within these Insurance Code sections, or within any public policy in California, which dictates requirements for coverage of nonowned automobiles. [Citations.] Consequently, the insurer may lawfully limit coverage to certain types of vehicles, including vehicles not owned by the named insured."

Applying this reasoning to the present case we conclude that because none of the above referred to Insurance Code sections requires coverage under a parent's policy for automobiles purchased by unlicensed minors, Allstate was entitled to exclude such automobiles from coverage. ■ As we explained above, the subject policy contains such an exclusion. We, therefore, conclude that the trial court did not err in determining that the subject automobile was not a "nonowned" automobile for purposes of the Allstate policy.

■ As explained above, an independent basis for the trial court's judgment was its determination that the Camaro was not insured under the Allstate's policy because it was "available or furnished for the regular use of [Jon Goyette]." On appeal the Thompsons' urge as a matter of law the Camaro was not available or furnished for Jon Goyette's regular use because (1) Jon Goyette's parents admonished him not to drive any vehicle without a driver's license and (2) the statutory proscription against driving without license.

To support this contention the Thompsons' rely primarily on *Interinsurance Exchange* v. *Smith* (1983) 148 Cal.App.3d 1128 [196 Cal.Rptr. 456]. In *Smith,* a claim was made under a named insured's policy when her daughter was involved in a collision while driving a pick-up truck owned by the driver's father. Coverage turned on whether the daughter's use of that truck fell within the exclusion for automobiles which were " 'available for regular use' " of an insured. (*Id.,* at p. 1132.)

In concluding that this exclusion did not preclude coverage, the *Smith* court focused on the numerous restrictions the truck's owner placed on its use by the driver: for example, she could use it only when the owner did not need it for work, her use was completely dependent upon the owner's consent, she did not have her own set of keys, she could not drive outside the county without the owner's permission and she could only drive the truck for "functional," not pleasure, purposes. (148 Cal.App.3d at p. 1132.)

As distinguished from *Smith,* and the other cases on which the Thompsons' rely, in the case at bench no restrictions were placed on Jon Goyette's use of the subject Camaro *by the owner of that automobile.* (See *Truck Ins. Exch.* v. *Wilshire Ins. Co.* (1970) 8 Cal.App.3d 553, 561-562 [87 Cal.Rptr. 604] [the trial court could reasonably infer that an automobile "loaned" to an insured by an automobile dealership was intended to be used "for a limited period of time, restricted to a reasonable geographical area, and for a limited purpose"]; *Safeco Ins. Co.* v. *Thomas* (1966) 244 Cal.App.2d 204, 206-207 [52 Cal.Rptr. 910] [an employee's "unusual" use of a business car did not render that car available for his regular use]; *Pacific Auto. Ins. Co.* v. *Lewis* (1943) 56 Cal.App.2d 597, 600 [132 P.2d 846] [a business automobile supplied to an employee for business use was not available for his regular use even though the employee obtained special permission on one occasions to use the automobile for personal purposes].) Indeed, as explained above, Jon Goyette was an owner of the Camaro under the terms of the Allstate policy. A parental admonition by a nonowner of an automobile to a minor not to drive that automobile which is actually possessed and controlled by that minor does not render it unavailable for his regular use. It simply makes the minor's use of the automobile subject to parental discipline.

Similarly, while the statutory proscription against driving without a license served to render Jon Goyette's operation of the Camaro unlawful it did not render that automobile unavailable for his regular use.

We, therefore, conclude the trial court did not err in relying on the "available or furnished for the [insured's] regular use" exclusion as an independent basis for its judgment.

In view of our conclusion (1) that Jon Goyette owned the subject Camaro under the terms of the Allstate policy and (2) that the Camaro was available and furnished for his regular use, we need not, and therefore do not, address the Thompsons' contention that Jon Goyette "did not have permission to use the 1967 Camaro."

The judgment is affirmed. Appellant to bear the costs of this appeal.

Woods (A. M.), P. J., and Goertzen, J., concurred.