**The AETNA CASUALTY & SURETY COMPANY, Appellant,**

**v.**

**David J. DUNCAN and Linda D. Duncan; Michael J. Duncan; Stephen T. Bickel; and Paul Catherman, t/d/b/a Pleasant Valley Auto Sales.**

**No. 92–3038.**

United States Court of Appeals, Third Circuit.

Argued July 7, 1992.

Decided Aug. 14, 1992.

---

Nancy DeCarlo Fabi (argued), Zimmer, Kunz, Loughren, Hart, Lazaroff, Trenor, Banyas & Conaway, P.C., Pittsburgh, Pa., for appellant Aetna Casualty & Surety Co.

Alan R. Krier (argued), Altoona, Pa., for appellee Stephen T. Bickel.

Dennis J. Stofko (argued), Johnstown, Pa., for appellee Paul Catherman t/d/b/a Pleasant Valley Auto Sales.

Before: SLOVITER, Chief Judge, STAPLETON and SEITZ, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

Aetna Casualty & Surety Company ("Aetna") issued a liability policy to David and Linda Duncan containing the following exclusionary clauses:

We do not provide liability coverage:

. . . . .

9. For the ownership, maintenance or use of any vehicle, other than your covered auto, which is owned by you or furnished or available for your regular use.

10. For the ownership, maintenance or use of any vehicle, other than your covered auto, which is owned by or furnished or available for the regular use of any family member. However, this exclusion does not apply to you.

The Duncans' son, Michael, was the driver of a car involved in a one-car accident. Michael, a minor at the time, purchased the car 30 minutes before the accident occurred. The car dealer that sold the car to Michael, Pleasant Valley Auto Sales ("Pleasant Valley"), failed to ascertain the existence of insurance coverage as required by state law and provided false information on the vehicle registration form in violation of state law. A passenger injured in the accident sued Michael, and this action was brought by Aetna to secure a declaratory judgment that it was not required to provide a defense or indemnity under the policy. The district court granted summary judgment to the Duncans.

Because we conclude that Michael "owned" the car within the meaning of these exclusionary clauses, we hold that Aetna is not required to defend or indemnify. We will therefore reverse and remand with instructions that summary judgment be entered for Aetna.

## I.

In its policy, Aetna agreed "to pay damages for bodily injury or property damage

for which any *covered person* becomes legally responsible because of an accident." Covered persons included "family members," and it is uncontroverted that Michael Duncan was a family member when the accident occurred. The terms "you" and "your" in the exclusionary clauses refer to David and Linda Duncan, and the term "covered auto" referred to their two cars, identified on the Declaration Page as a 1977 Chevrolet Malibu and a 1980 Chevrolet Citation. The parties agree that the exclusions were intended to prevent an insured or family member from increasing Aetna's exposure by regularly using an additional vehicle for which a premium had not been paid.

On June 13, 1985, Michael Duncan, who was then 17–years–old, purchased a used 1976 Toyota Celica from Pleasant Valley. Michael paid $1200 in cash for the car. The dealership issued a temporary registration card, without confirming the existence of insurance, in violation of 67 Pa.Code § 43.5(d)(2). In order to reduce the applicable sales tax, Pleasant Valley also completed the vehicle registration form to reflect a sales price of $800, rather than the actual sales price of $1200, thereby violating 67 Pa.Code § 43.10(a). The sales representative contacted Michael's mother, who told the sales representative that Michael did not have her permission to purchase the vehicle. The sales representative sold the car to Michael anyway. Approximately 30 minutes after leaving the dealership, Michael and his passengers, which included Stephen Bickel, were involved in an accident that resulted in serious injuries to Bickel.

On June 24, 1985, David and Linda Duncan filed in the Court of Common Pleas for Blair County a complaint in equity on behalf of Michael against Pleasant Valley and the Pennsylvania Bureau of Motor Vehicles (the "Bureau"). Following trial, the court issued a permanent injunction preventing the Bureau from registering title to the Toyota in Michael's name. In the course of explaining Michael's entitlement to that relief, the court opined that the contract was "void *ab initio.*" *Duncan by Duncan v. Pleasant Valley Auto Sales*, No. 85–3510

Equity, slip op. (Court of Common Pleas of Blair County, Pennsylvania, April 20, 1985). The court found that Pleasant Valley had violated both 67 Pa.Code § 43.5(d)(2) and 67 Pa.Code § 43.10(a). It also held that because Michael was a minor and because the car was not a necessity, Michael could disaffirm the contract and recover the purchase price of $1200. The court's judgment was not appealed.

Subsequently, Bickel filed a civil action in the Bucks County Court of Common Pleas against Michael Duncan and Paul Catherman, t/d/b/a/ Pleasant Valley, seeking damages for personal injuries sustained in the automobile accident. Aetna promptly filed this declaratory judgment action against David, Linda and Michael Duncan, Bickel and Catherman t/d/b/a/ Pleasant Valley. The complaint alleged that no duty to defend or indemnify exists with respect to the allegations contained in the Bickel complaint. The parties filed cross-motions for summary judgment; both sides relied solely on the terms of the policy and tendered no extrinsic evidence. The district court entered summary judgment in favor of all defendants and denied Aetna's cross motion for summary judgment. Aetna filed this timely appeal. Our review on appeal is plenary. *Northern Insurance Co. v. Aardvark Associates*, 942 F.2d 189, 194 n. 5 (3d Cir.1991).

## II.

We must first determine the effect on the decision of the Court of Common Pleas which declared the contract between Michael Duncan and Pleasant Valley void *ab initio.* Because Aetna was not party to the Common Pleas suit, the decision has no collateral effect in this case. *Hoover v. Cumberland, Maryland Area Teamsters Pension Fund*, 756 F.2d 977, 979 (3d Cir. 1985). Moreover, as we read the opinion in that suit, the court there addressed only the issue of whether Michael had a right under Pennsylvania law to rescind the sale. That issue is quite distinct from the issue involved in the present case, i.e. whether at the time of the accident, Michael "owned"

the car within the meaning of the Aetna policy.

■ Turning to the task of divining the intent of the parties as memorialized in the policy, we first review the relevant principles of Pennsylvania law. It is against this background that the parties contracted. First, the Pennsylvania Vehicle Code defines the "owner" of a vehicle as one having a "property right in or title to a vehicle." 75 Pa.C.S.A. § 102. Thus, a person may be an "owner" of a vehicle in Pennsylvania without possessing all of the incidents of ownership. Further, it is clear that under the Pennsylvania scheme, a state-issued "certificate of title is in no way controlling on the question of ownership, and is merely some evidence of it." *Federal Kemper Ins. Co. v. Ward,* 679 F.Supp. 489, 492 (E.D.Pa.1988); *see also Folmar v. Hartford Accident & Indemnity Co.,* 242 Pa.Super. 350, 363 A.2d 1304, 1307 (1976); *In re Summer's Estate,* 424 Pa. 195, 226 A.2d 197 (1967). Rather, the courts of Pennsylvania look to see who it is that in fact possesses the attributes commonly associated with ownership. In *Wasilko v. Home Mutual Casualty Co.,* 210 Pa.Super. 322, 326, 232 A.2d 60 (1967), for example, an insured had purchased an automobile with his own funds and had had the certificate of title issued in the name of his 72-year old mother. His policy had an exclusionary clause that was similar to that one in the present case, which the insurer invoked after the insured had an accident with the car. The court identified the relevant issue as whether the insured was vested with "the elements of ownership—the use, benefit, possession, control, responsibility for, and disposition of the automobile." *Id.* 232 A.2d at 62. Finding that the insured was indeed vested with all of these incidents of ownership, the court held that the exclusionary clause applied and that there was no coverage. *See also, Federal,* 679 F.Supp. at 492; *Folmar,* 363 A.2d at 1307.

■ Finally, it is important to note that Pennsylvania follows the general Restatement rule with respect to contracts of a minor. Contracts of a minor, other than contracts for necessities, are voidable by the minor, not void. This means that a minor can render a contract a nullity by disaffirming it at any point up until a reasonable time after the minor attains his or her majority. It does not mean a contract with a minor is a nullity prior to any such disaffirmance. *Campbell v. Sears Roebuck & Co.,* 307 Pa. 365, 161 A. 310 (1932); *Simmons v. Parkette National Gymnastic Training Center,* 670 F.Supp. 140 (E.D.Pa.1987) (applying Restatement of Contracts 2nd §§ 7 and 4 in Pennsylvania diversity case); *Capetola v. Orlando,* 463 F.Supp. 498 (E.D.Pa.1978). Moreover, the Pennsylvania Courts have made it clear that application of the rules concerning the disability of infancy should be limited by the rationale that supports them. As the Pennsylvania Supreme Court has explained, the purpose of the law is to protect minors " 'against their own lack of discretion and against the snares of designing persons' ... This 'protective cloak' is to safeguard the interests of the minor; it is not to be employed as a vehicle whereby the minor is enabled to practice unconscionable business methods. It is a shield for defense, not a sword for offense." *Pankas v. Bell,* 413 Pa. 494, 198 A.2d 312, 315 (1962).

■ With this background and with the purposes of the exclusion clauses in mind, we must determine if the reference to "owned" automobiles in those clauses included the Toyota at the time of Michael's accident. We find it significant that at the time of the accident, Michael possessed all of the generally accepted attributes of ownership. He clearly had the exclusive right to use, enjoy, and control the vehicle. Pleasant Valley, having taken and kept his $1200, was certainly in no position to interfere in any way with that use, enjoyment, and control. Putting aside for a moment Pleasant Valley's violation of the two statutes, it also seems clear that unless and until Michael chose to rescind the transaction, he was responsible for seeing that the vehicle was removed from the scene of the accident. Finally, we know of no reason why Michael, at the time of the accident,

could not have transferred the car to another. *See e.g. Old Mutual Casualty Company v. Clark*, 53 Ill.App.3d 274, 11 Ill.Dec. 151, 368 N.E.2d 702 (1977); *Finney v. Farmers Ins. Co.*, 21 Wash.App. 601, 586 P.2d 519, *aff'd*, 92 Wash.2d 748, 600 P.2d 1272 (1978). Thus, like the insured in *Wasilko*, Michael had the "use, benefit, possession, control, responsibility for and disposition of" the automobile at the time of his accident.

Because Michael had unlimited and exclusive control over the vehicle at the time of the accident and because at that time he intended to exercise that control for the indefinite future, it seems to us that the result reached by the district court undermines the undisputed purpose of these exclusion clauses. As we have noted, that purpose is to prevent the insured and the insured's family from getting a "free ride." The total premium paid by the insured under the policy is determined by the risk assumed by the insurer. That risk is defined largely by the road exposure reasonably to be expected from the vehicles identified in the policy. If the insured and his family are afforded coverage while driving cars, other than those so identified, which they are entitled to use on a regular basis, the insurer is forced to assume a risk for which it did not contract. Michael bought the car for his own use; the fact that that use was shortlived is fortuitous and of no legal relevance. To hold that Michael's liability is covered by the policy would be to require Aetna to provide coverage for which it received no compensation.

Based on the foregoing analysis and authorities, we would expect the Supreme Court of Pennsylvania to reach the same result in this case that the Illinois Court of Appeals reached in *Old Mutual Casualty Company v. Clark*, 53 Ill.App.3d 274, 11 Ill.Dec. 151, 368 N.E.2d 702 (1977). In that case, a minor, after purchasing a car and being involved in an accident, disaffirmed his purchase. The court held that the minor owned the car at the time of the accident for purposes of a similar exclusion in his parent's insurance policy. The Court reasoned as follows:

the disaffirmance did not erase William A. Clark's [the minor's] ownership status under the insurance policy ... [T]he disaffirmance did not affect the relationship between plaintiff [Old Mutual Insurance Company] and William A. Clark prior to the disaffirmance. It only affected the relationship between William A. Clark and the seller of the automobile. Our holding adequately protects a minor's right to disaffirm upon attaining majority. The privilege of minority or infancy is not to be used as a sword; (citations omitted) it is to be used only as a shield against the inexperience and improvidence of youth. (citation omitted). To permit defendant William A. Clark to gain insurance coverage by disaffirming the purchase of the automobile would be to allow his infancy not only to act as a shield but to be used as a sword for attacking the rights of plaintiff.

We believe the Supreme Court of Pennsylvania would find this reasoning persuasive and on point. *See also Finney v. Farmers Ins. Co.*, 21 Wash.App. 601, 586 P.2d 519, *aff'd*, 92 Wash.2d 748, 600 P.2d 1272 (1978) (driver determined to own vehicle under exclusionary provision in parent's insurance policy where at age 17, driver purchased automobile, and received an executed certificate of title, thereby violating statute which prohibited minors from being registered as legal owner of a motor vehicle).

We thus conclude that, unless Pleasant Valley's statutory violations somehow had the effect of altering Michael's rights with respect to the vehicle, the exclusion should apply. We now turn to the reserved issues arising from those violations.

■ It is generally held that a contract entered into in violation of a statute will deprive the parties of access to judicial relief. Consistent with this proposition, the status quo of a fully executed contract will not be disturbed. Pennsylvania shares this view. *Dippel v. Brunozzi*, 365 Pa. 264, 74 A.2d 112, 114 (1950); *Watrel v. Com., Dept. of Educ.*, 88 Pa.Cmwlth. 1, 488 A.2d 378, 380 (1985); *Gramby v. Cobb*, 282

Pa.Super. 183, 422 A.2d 889, 892 (1980).[1] The illegality of such a contract does not alter a buyer's status as owner because the law leaves the parties in the same positions in which it finds them.

We find nothing about the statutes that Pleasant Valley violated that we believe would induce the Pennsylvania Supreme Court to abandon its general rule in this case. The first statute that Pleasant Valley violated was 67 Pa.Code § 43.10(a) ("[a]n issuing agent shall not knowingly issue a temporary registration card or plate containing a misstatement of facts or other false information"). Sanctions for violations of this statutory provision are expressly provided in the statute itself. 67 Pa.Code § 43.11. Moreover, this statute has nothing to do with insurance. Rather, the purpose of the statute is to prevent car dealers from cheating the state out of money. Accordingly, it would neither serve nor run counter to the purpose of the statute to hold that the purchaser of a vehicle receives no ownership interest when the dealer misrepresents the facts.

Pleasant Valley also violated 67 Pa.Code § 43.5(d)(2) (car dealers must ascertain that there exists insurance coverage before issuing a temporary registration card) by failing to assure that Michael Duncan had insurance. According to *Lieberman v. Abat's Auto Tag Service*, 344 Pa.Super. 350, 496 A.2d 831, 832 (1985), this statute was designed "to protect all motorists by insuring that they will have recourse to the comprehensive, expeditious and equitable No-fault insurance coverage required of all motorists." Pennsylvania's no-fault insurance scheme was repealed before Michael's accident occurred.[2] While it is true that the general purpose of the statute is to assure that persons injured on the high-ways of Pennsylvania receive compensation and that finding coverage here would assure that Bickel receives some compensation, we do not believe the Pennsylvania Supreme Court would choose to further the statutory goal by holding Aetna responsible for Pleasant Valley's wrongdoing. We think it far more likely that it would seek to assure compensation for Bickel by implying a cause of action in his favor against Pleasant Valley. Indeed, at least one Pennsylvania court has done precisely that. According to the court in *Lieberman*, " 'an automobile dealer who issues a temporary registration card and plate to a purchaser without first securing proof of No-fault insurance is answerable in trespass to one injured by the dealer's neglect' [*Lyngarkos v. Commw. of Pa., Dpt. of Trans.*, 57 Pa.Cmwlth. 121, 426 A.2d 1195 (1985)]." *Lieberman*, 496 A.2d at 832.

In sum, we hold that Pleasant Valley's statutory violations do not affect Michael's status as an "owner" of the Toyota.

### III.

We will reverse and remand to the district court with instructions that summary judgment be entered for Aetna.

---

**1.** Courts generally hold that a sale of a car which is tainted by a violation of law does not affect a buyer's status as owner. *See Allstate Ins. Co. v. Thompson*, 206 Cal.App.3d 933, 254 Cal.Rptr. 84 (1988) (sale of car to unlicensed minor, thus violating state statute, did not affect the buyer's status as owner of the car); *Allstate Ins. Co. v. Chinn*, 271 Cal.App.2d 274, 278, 76 Cal.Rptr. 264 (1969) (automobile was "owned" by the insured's son since he was buyer in possession even though his failure to comply with the registration requirements resulted in the sale being invalid); *Semple v. State Farm*, 215 F.Supp. 645 (E.D.Pa.1963) (even though purchaser of car failed to take the affidavit of assignment of the title certificate, as required by state statute, purchaser was owner of car under his parent's insurance policy).

**2.** Pennsylvania's no-fault insurance law, 40 P.S. §§ 1009.101 to 1009.701, was repealed, Feb. 12, 1984; P.L. 26, No. 11 § 8(a), effective Oct. 1, 1984.