**NATIONWIDE INSURANCE COMPANY, Plaintiff**

v.

**Lyndon W. LADNER, Defendant.**

**Civil Action No. 1:95cv531GR.**

United States District Court,
S.D. Mississippi,
Southern Division.

Aug. 28, 1996.

Floyd G. Hewitt, Jr., Compton, Crowell & Hewitt, Biloxi, MS, for plaintiff.

## MEMORANDUM OPINION

GEX, District Judge.

This cause is before the Court on the motion for summary judgment, or in the alternative, for default judgment, filed by the plaintiff, Nationwide Insurance Company [Nationwide] [6–1]. The defendant has not responded to the motion. After due consideration of the evidence of record, Nationwide's arguments, the applicable law, and being fully advised in the premises, the Court finds that summary judgment should be entered in favor of Nationwide.

### Statement of Facts

The defendant, Lyndon W. Ladner, purchased a new Chevrolet Camaro in 1981. On December 21, 1994, Ladner was involved in an accident while driving the Camaro, resulting in a lawsuit filed against him in state court by an injured third party. Until 1993, the Camaro was insured by a Nationwide policy, which bound Nationwide to pay "all sums which those entitled to protection become legally obligated to pay as damages arising out of the ownership ... or use ... of the *described* vehicle." Def.'s Mot. for Summ.J., Exh. C (Nationwide Auto Policy), at 1 (emphasis added). In addition to providing coverage for vehicles expressly described under the policy, coverage was provided for temporarily used, non-owned vehicles, and newly acquired vehicles that had not been owned for more than 30 days preceding the occurrence which would trigger the coverage. *Id.* at 4.

In 1993, Ladner purchased a used 1991 Toyota Camry to replace the Camaro. The Camaro was removed from the policy as a described vehicle and replaced by the Camry. At the time of the accident in December 1994, the Camaro was not included for coverage under the policy. Additionally, Ladner was making insurance payments only for the Camry and a 1977 Chevrolet pickup truck. The Camaro remained in Ladner's garage. His brother, Rodney, agreed to purchase the Camaro in September 1994 for $1,000, payable at $100 per month. The agreement was allegedly in writing. Rodney made payments of $100 in September and October, but skipped his November and December payments. Ladner agreed to rescind the agreement in December when Rodney refused to remove the vehicle from Ladner's garage. At all times until the accident, Ladner had retained the Camaro's certificate of title and had paid the annual registration fee in September 1994. The accident at issue occurred while Ladner was test driving the Camaro in an attempt to get it running. Prior to the accident, Ladner had not called his Nationwide agent to reinstate coverage on the Camaro and had not made any premium payments for this vehicle.

### Standard of Review

Summary judgment is designed "to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (citation and internal quotation omitted); *see Berry v. Armstrong Rubber Co.,* 780 F.Supp. 1097, 1099 (S.D.Miss.1991), *affirmed,* 989 F.2d 822 (5th Cir.1993), *cert. denied,* 510 U.S. 1117, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994). A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).

The failure of a party to respond to a motion for summary judgment does not auto-

matically entitle the moving party to summary judgment. *See John v. State of Louisiana Bd. of Trustees for State Colleges and Univs.,* 757 F.2d 698, 709–10 (5th Cir.1985). If the movant has not satisfied its initial burden, the nonmovant need not respond at all. *Id.* If the movant has met its burden, "the nonmovant cannot survive the motion by resting on the mere allegations of its pleadings." *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186 (5th Cir.) (citations omitted), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). When there is a wholly nonresponsive party, the Court looks to the evidence presented by the moving party to see if the moving party has met its substantive burden under Rule 56. *Smith v. Alumax Extrusions, Inc.,* 868 F.2d 1469, 1472 (5th Cir.1989).

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank Ocala v. Pelican Homestead & Sav. Assoc.,* 874 F.2d 274, 276 (5th Cir.1989) (citations omitted). "[T]hey are available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* (citations and internal quotation omitted; emphasis added); *see* FED.R.CIV.P. 55. Because a default judgment is not favored in the law, it follows that, when faced simultaneously with a motion for default judgment under Rule 55 and motion for summary judgment under Rule 56, the Court should dispose of a controversy under Rule 56 if the moving party has satisfied its burden. *See Smith,* 868 F.2d at 1472.

### Legal Analysis

Nationwide seeks declaratory relief that it is not obligated under the terms of the contract to provide a defense or to pay any damages to Ladner stemming from the accident at issue. In diversity cases, federal courts apply the law of the forum state to resolve purely contractual issues. *See Foreman v. Continental Casualty Co.,* 770 F.2d 487, 489 (5th Cir.1985); *Oxford Prod. Credit Ass'n v. Duckworth,* 689 F.2d 587, 588–89 (5th Cir.1982); *Blansett v. American Emp. Ins. Co.,* 652 F.2d 535 (5th Cir.1981). "A court is obligated to enforce a contract exe-cuted by legally competent parties where the terms of the contract are clear and unambiguous." *Merchants & Farmers Bank v. State of Mississippi,* 651 So.2d 1060, 1061 (Miss. 1995) (citation omitted). In such cases, "the contract must be interpreted according to its terms" or "construed exactly as written." *Foreman,* 770 F.2d at 489 (citation omitted). On the other hand, if terms of a contract are ambiguous, they are construed against the drafter. *See, e.g., Clark v. Carter,* 351 So.2d 1333, 1336 (Miss.1977). Moreover, if an ambiguity exists, the controversy cannot be resolved on summary judgment, and the agreement of the parties must be ascertained by the trier of fact. *See Dennis v. Searle,* 457 So.2d 941, 945 (Miss.1984); *Covington Cadillac v. South Aire, Inc.,* 242 Miss. 716, 136 So.2d 866, 869 (1962).

■ It is clear from the record that the Camaro was not a covered vehicle under the policy at the time of the accident. The issue arises whether the vehicle was a temporarily used, non-owned vehicle, or a newly acquired vehicles that had not been owned for more than 30 days preceding the accident. In either case, the issue of ownership at the time of the accident is dispositive. Nationwide contends that the vehicle was owned by Ladner at all times, without regard to the alleged sale to his brother.

■ Mississippi's Motor Vehicle Title Act provides that "[t]he term 'owner' shall mean a person or persons holding the legal title of a vehicle." MISS.CODE ANN. § 63–21–5(m) (1972). The statutory scheme further provides that "[a] certificate of title issued by the State Tax Commission is *prima facie* evidence of the facts appearing on it." MISS. CODE ANN. § 63–21–19(4) (1972) (emphasis added). The Mississippi Supreme Court has further held that the Act "accepts certainty of title as [the] primary value, and provides a simple method of transferring title to motor vehicles—endorsement and delivery to the transferee of the title certificate." *Hicks v. Thomas,* 516 So.2d 1344, 1346 (Miss.1987); *see also* MISS.CODE ANN. § 63–21–31(1) (1972) (requiring that certificate of title be mailed or delivered to transferee). In this case, the certainty of title is vital to Nationwide's abili-

ty to evaluate and define the risk for which the premiums are fixed.

In *United States Fire Ins. Co. v. Bates,* 207 So.2d 620 (Miss.1968), cited by Nationwide, the Mississippi Supreme Court considered an appellant-insurer's liability to a judgment creditor based on whether the automobile at issue was owned by the insured-contractor or by the judgment debtor, Mable Bates. The appellant-insurer essentially relied on the following evidence to disclaim ownership in the contractor-insured: (1) the contractor's vehicle was given to Bates with "no strings attached," (2) Bates had the only set of keys to the vehicle, and (3) the vehicle was garaged at Bates' residence. *Bates,* 207 So.2d at 621. The Mississippi Supreme Court held that the foregoing testimony and evidence was not sufficient to defeat the presumption that the contractor, not Bates, owned the automobile at the time of the accident because the vehicle was titled and registered in name of the contractor and the written bill of sale was not prepared, executed, or delivered prior to the accident at issue. *Id.* at 621-22. *Bates* has been characterized by the Fifth Circuit as turning on the technical rather than constructive ownership of the vehicle at issue. *See Coale v. Transamerica Ins. Co.,* 890 F.2d 802, 804 (5th Cir.1989).[1]

Alternatively, even assuming *arguendo* that the certificate of title was not dispositive of the issue of ownership, the Court finds that the circumstances of this case—which differ substantially from those in *Bates*—demonstrate conclusively that Ladner remained the owner of the Camaro at all times. In *Aetna Casualty & Surety Co. v. Duncan,* 972 F.2d 523, 527 (3rd Cir.1992), the Third Circuit noted that a state-issued certificate of title under the Pennsylvania Vehicle Code was not controlling on the issue of ownership, but "merely some evidence of it." *Id.* at 526. In *Duncan,* the insureds' minor son, Michael,

bought an automobile from a dealer against their wishes and had an accident 30 minutes later. In an action by a passenger against the insureds (the Duncans), the district court ruled in favor of the Duncans and against their automobile insurance company. The Third Circuit reversed, ruling in favor of the insurance company and holding that Michael "owned" the car within the meaning of exclusionary terms contained in the Duncans' insurance policy. *Id.* at 524. In deciding the ownership issue, the court considered "the elements of ownership—the use, benefit, possession, control, responsibility for, and disposition of the automobile." *Id.* at 526 (citation and internal quotation omitted). Looking to the elements of ownership in this case, the Court finds that, because Ladner retained possession and control over the vehicle as well as the certificate of title and registration, it is clear that, even under a more liberal treatment of the issue, no argument can be raised that Ladner was not the owner of the Camaro on the day of the accident.

Of course, *Duncan*'s reading of Pennsylvania law would be at odds with the more narrow position taken by Mississippi on the issue of vehicle ownership, particularly given facts unique to the subject policy. The intent of the Mississippi legislators in drafting the Motor Vehicle Title Act cannot be ignored. The Court observes the following analysis in *Fleming v. Travelers Ins. Co.,* 206 Miss. 284, 39 So.2d 885 (1949):

We are dealing with a contract of insurance. We must inquire what the parties thereto meant. Practical considerations must be given play, interpreted in the light of the purpose of the policy provision. This provision has been repeatedly held to reveal an obvious purpose to avoid a multiple coverage of several vehicles owned by members of the same family who, by their close intimacy, may be expected to use the cars of each other without hindrance and with or without permission, thus increasing

---

1. The Court followed this analysis in *Ramsay v. State Farm,* 1:94cv486GR (S.D.Miss., December 18, 1995) (unpublished), now on appeal before the Fifth Circuit Court of Appeals. *Ramsay v. State Farm,* Appeal No. 96–60323, 105 F.3d 654 (5th Cir.). In *Ramsay,* the insured had an accident while driving an automobile he had purportedly sold to his daughter. The vehicle, how-

ever, was garaged at the insured's residence and the certificate of title remained in the insured's name. The Court held that because the vehicle was not among the vehicles listed in the insured's policies and was not a newly acquired, temporary substitute, or non-owned vehicle, the vehicle was not covered under the policy.

the liability of the insurer who has a right to expect each owner to contract for his own coverage. Concession is made to casual permissive use by the insured of vehicles of other persons, whose permissions may be considered episodic or not subject to abuse.

*Id.* 39 So.2d at 887.

Nationwide had a right to expect that Ladner would come forward and expressly contract for the additional risk imputed by the exclusionary term. *Id.* Otherwise, Ladner would get a "free ride" by receiving benefits for the occurrence of a risk that Nationwide did not undertake under the subject policy. *Duncan,* 972 F.2d at 527. Ladner conceded in his deposition that he really did not expect to have coverage for the Camaro, a vehicle he had specifically replaced with the Toyota Camry and for which he had ceased making payments. Pl.'s Mot. for Summ.J., Exh. B (Ladner's Depo.), at pp. 48–49. Nor does the record show that the Nationwide agent was in possession of facts that would have required him to inquire further or to advise Ladner that he would not receive coverage for the garaged Camaro the day he decided to take a test drive. *Cf. Thomas v. State Farm Mut. Auto. Ins. Co.,* 796 F.Supp. 231, 237 (S.D.Miss.1992) (an insurer or its agents have no obligation to recommend liability and uninsured motorist policy limits to applicants). Because Ladner owned the Camaro at all times as defined by Mississippi law, the Court finds that it does not qualify as a temporary replacement or newly acquired vehicle within the meaning of the policy. Further, because the Camaro was not included under the policy at the time of the accident, it follows that coverage is not available under the express terms of the policy.

### Conclusion

For reasons set forth above, the Court finds that the Camaro operated by Ladner at the time of the accident was not a vehicle covered under Nationwide's policy of insurance. The Court further finds that Nationwide is entitled to the declaratory relief it seeks. Accordingly, the Court finds that Nationwide's motion for summary judgment [6–1] is well-taken and should be granted. A final judgment in accordance with and incorporating by reference this Memorandum Opinion shall issue this date. The parties will bear their respective costs.